UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

NATIONAL SERVICE INDUSTRIES, INC.,
F/D/B/A NORTH BROTHERS, INC.                                        PLAINTIFF

VS.                                        CIVIL ACTION NO. 3:09CV83HTW–LRA

JAY T. SEGARRA, M.D., ET AL.                                        DEFENDANTS

### DR. JAMES W. BALLARD'S MEMORANDUM IN SUPPORT
### OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

Dr. Ballard seeks dismissal upon several grounds, *including*: the Plaintiff's possible lack of standing to claim relief for wrongs allegedly done to others (North Brothers, Inc.) or to persons whom Plaintiff does not represent, and NSI's lack of cognizable injury; the running of the applicable federal and state limitations periods; the absence of any duty owed by Dr. Ballard to the Plaintiff, and the failure to plead properly as required by Fed. R. Civ. P. 8(a), 9(b), the R.I.C.0. statutes and pertinent authorities including the Standing Order of this Court (July 13, 1998), and extant state law controlling the state law claims.

**Plaintiff's Standing and Injury to Plaintiff:**   The separate corporate entity North Brothers, Inc., was apparently the defendant in the claims referenced in Exhibit V to the Complaint.  But the Complaint suggests that National Services Industries, Inc. "formerly did business as North Brothers, Inc." (etc.), a distinct corporate entity (and presumably not NSI's sham "alter ego".  These facts are not well pleaded.  Plaintiff apparently has not properly pleaded its own "injury"; a RICO plaintiff must plead injury to *his or its own* "business or property."  Title 18 does not allow private civil damage claims by a shareholder for RICO injury to a corporate entity.  This is the position taken by the Fifth Circuit in *Crocker v. Federal Deposit Insurance*

*Corporation*, 826 F.2d 347 (5th Cir. 1987), *cert. den.*, 485 U.S. 905 (1988). *See also, Ocean Energy II v. Alexander and Alexander, Inc.*, 868 F.2d 740 (5th Cir. 1989). And, not only does a shareholder not have standing to sue for corporate injury under RICO, neither is a *shareholder* able to state a claim for *direct* injury or that its injury was *proximately* caused only to the corporate "victim." The Fifth Circuit test enunciated in *Whalen v. Carter*, 954 F.2d 1087, 1091 (5th Cir. 1992) is not met by NSI's unsubstantiated pretension to the right to assert any RICO claim against *anyone* for harm allegedly suffered *by North Brothers, Inc.*

**RICO Limitations:** A virtually identically pleaded RICO/state law fraud case was summarily dismissed by the United States District Court for the Northern District of West Virginia, (C*SX Transportation, Inc. v. Robert v. Gilkinson, et al*). (Case 5:05–cv–00202–FPS–JES) (A series of four memorandum opinions and orders (for the Court's information and convenience, Documents No's. 170, 201, 264 and 265 addressed issues also being raised by this Motion); we now address the *CSX* rulings (available on Pacer) that spoke to the limitations issues.):

> From *CSX*
> (Document No. *265*)
> CSX's RICO conspiracy 18 U.S.C. § 1962(d) claim is governed by a uniform four year statute of limitations period. *See Agency Holding Corp. v. Malley Duff & Assoc.*, 483 U.S. 143, 156 (1987). Dr. Harron [analogously positioned to Dr. Ballard, movant here] argues that CSX's claim in Count 2 must fail because **eight of the nine lawsuits that comprise the basis of that claim were filed more than four years before CSX filed its amended complaint in this case. This Court agrees.**

*Id.*, at 2 (emphasis added). In the instant civil action, **a review of Exhibit V to Complaint will show that all 31,853 claims and suits brought against National Service Industries, Inc. were,**

2

according to NSI's own pleading, *filed against North Brothers, Inc.* *(and the remainder were*

*settled)* *more than four years* before February 11, 2009, the filing date of the instant civil action.

The District Court in *CSX* went on:

> . . . with the exception of [the 9th] Earl Baylor's lawsuit, **each of the above [8] lawsuits were (sic) *filed* more than four years before July 5, 2007 (the date of the amended complaint). *Additionally*, three of the lawsuits were *settled* more than four years prior to the filing of the amended complaint.**[1]

> . . . CSX contends that application of the *injury*[2] discovery accrual rule, which applies to CSX's federal and state claims, is a fact–intensive determination. Although the date a cause of action began to accrue may in some cases raise a jury question, **when the facts alleged in the complaint indicate that, with reasonable diligence, the plaintiff should have uncovered the alleged *injury* prior to the limitations period, the claim will be time–barred as a matter of law.** (citations omitted)

>  In this case, **CSX was on inquiry notice of the *injuries* alleged in Count 2 when the nine allegedly fraudulent claims against it were *filed and/or settled*.** Under case management orders implemented by the West Virginia Mass Litigation Panel, **CSX . . . was given access to the original x–rays, medical records, and records maintained by the Railroad Retirement Board as to each claimant. The medical records that CSX had the ability to obtain *included* the International Labor Organization ("ILO") forms which listed Dr. Harron's opinions regarding the quality of the x–ray and the severity of the injury observed.** [See NSI's Complaint at ¶¶ 25, 98–100] **Additionally, CSX had the right to conduct depositions with respect to the claim of each plaintiff on an as–needed basis.**

---

[1] See Exhibit V to the Complaint and paragraphs 14 and 16 of Dr. Ballard's Motion to Dismiss.

[2] See paragraph 11 of the Complaint wherein Plaintiff plainly states it is trying to misuse the discovery rule, excusing its late filing not by a belated discovery of injury but to when Plaintiff ascertained facts sufficient to begin to discover Defendants' complex fraudulent *scheme*. . . ." That is not how the *injury* discovery rule operates, when it is actually *available*.

**. . . [A]ll that is required to begin the limitations clock is actual or inquiry notice that CSX was injured by the defendants. Because CSX had access to the medical information upon which the claimant's (sic) lawsuits were based soon after the filing of each of the nine suits, CSX is charged with notice of its injuries on or substantially near the date those cases were filed. Accordingly, because eight of the nine cases were filed . . . more than four years prior to date the amended complaint was filed, Count 2 is time–barred as to Dr. Harron and must be dismissed.**

**The fact that one case was filed within the limitations period (Earl Baylor's lawsuit) does not change this result.  To state a RICO conspiracy claim, a plaintiff must show a "pattern of racketeering activity."  18 U.S.C. 18 U.S.C. § 1961(5).  A "pattern of racketeering activity" requires a showing of at least two acts of racketeering activity.  Id.  Because only one alleged act of racketeering activity is not time–barred, CSX has failed to show the requisite pattern to sustain its civil RICO conspiracy claim.**

Id., at 3–6 (emphasis added) As regards the allegation made against Dr. Ballard, according to Complaint Exhibit V, *not a single one of the "predicate acts" averred* (but only generally alleged) about him were allegedly committed **after** February 11, 2005, *i.e.*, within four years of the filing of the instant civil action.  If Plaintiff had standing to sue, still all of Plaintiff's RICO claims are time–barred *and* the alleged "pattern" element has collapsed of its own *lack of weight*.

The West Virginia District Court went on to similarly dispose of 8 of the 9 *state* law fraud claims under West Virginia's "catch–all" statutes of limitations (the analog to Mississippi Code Section 15–1–49).  *Id.*, at 6–7.  That left only one state–law claim (Earl Baylor's) that was not facially "time–barred;" as we shall now show, there are no such surviving claims *in NSI's case*.

**State Limitations:** The Motion shows how, from the face of the Complaint, Plaintiff is precluded by our state's borrowings statute to assert its "state law" claims that allegedly accrued *to it*, if at all, subject to the controls of various other states' limitations and prescription periods.

4

As catalogued in the Motion, under *CSX* every one of the 31,916 underlying "claims" was already time–barred in the states where they allegedly arose long before the instant lawsuit was filed. When the West Virginia District Court dismissed not only CSX's RICO claims but also its state law claims, it did so in these terms:

> Because eight of the nine **claims relied upon by CSX to establish its state claims were <u>filed</u> more than two years** [the state limitations period in West Virginia, West Virginia Code § 55–2–12] **before the amended complaint was filed in this case, reliance on** *those suits* **is <u>time–barred</u>.**

*Id.*, at 7. (emphasis added)  This order disposed of 8 of the 9 underlying suits serving as bases the *state* law claims against Dr. Harron — only one was not time barred.  ***But all 31,916 are time–barred against Dr. Ballard*** — if these claims were not timely because not sued upon <u>within four years</u> per *RICO's <u>longer</u>* limitations period, they certainly cannot be timely given the shorter *three* year Mississippi statute and given that *the* Mississippi *borrowings statute bar* keeps non–resident NSI from suing here on its state law claims which are already time–barred in the states where they arose.  Miss. Code Ann. Section 15–1–65.  Under the *CSX* decision, NSI cannot rest its hopes on the *injury* "discovery" rule.

This defendant also would ask that the Court to observe in passing that the entire "justification" for bringing this civil action in this district is that it is alleged that some of the 31,916 claims — all 31,916 of them time–barred for "predicate act" *or* state law significance — *might have been, somehow,* connected to this district (the Complaint doesn't particularize how under Rule 9(b)) . . . **were they *not* all *time–barred*.**

**"Professional Negligence" Limitations:**  Although Plaintiff has made it abundantly plain in the Complaint that Dr. Ballard was *consulting for* the claimants' various *attorneys* and Plaintiff

does not allege that Dr. Ballard ever saw, x–rayed, examined, interviewed or treated any of the 31,916 claimants (indeed, alleges that he did not!), it beggars understanding how *Plaintiff* — the ostensible former *adversary* of all 31,916 claimants — may accuse Dr. Ballard of professional negligence *toward those claimants* or that *NSI* could sue for that if they *were* his patients. Even so, the Motion sets out how the professional negligence limitations or prescriptions statutes of every state alluded to in the Complaint would bar a claim by a party claimant ("patient") with *actual* standing to sue Dr. Ballard. NSI has no such standing in its own right and is certainly not even arguably a suitable Rule 23 class representative for the 31,916 individuals as to whom NSI has been avowedly *adverse* in litigation.

**Representative Standing:** NSI also does not plead wherein it could be (or that it *is)* a surrogate for or class representative of any other asbestos manufacturing/distributing concerns. Thus, its allegations about how *"they"* have been similarly "victimized" cannot be given any notice and indeed has no substance at all, unless NSI is intimating that the law firm(s) that allegedly defended NSI also defended other companies who acted on the same attorneys' economic advice to settle masses of cases *rather than* discover the merits of "individual adverse" claims filed against *them*. NSI has not even pleaded its "own" claims or any cognizable injuries properly; it certainly cannot address alleged "injuries" *to non–parties*.

**RICO Pleadings Defects:** The Complaint manages in its 70 pages and 12 inches of exhibits to violate simultaneously both Fed. R. Civ. P. 8(a) and 9(b), to say nothing of the special pleading criteria established for RICO cases and the Standing Order of this Court (July 13, 1998); Plaintiff's RICO case statement does no more than track and echo that inadequate pleading — the

Complaint has failed to state a cognizable RICO claim against Dr. Ballard, for any one of the numerous reasons following.

Not every part of the Complaint is controlled by Fed. R. Civ. P. 8(a). *Yet* there is nowhere in the Complaint a short and plain statement of any assertions made against Dr. Ballard (*i.e.*, those facts or claims elements which *are* extrinsic to fraud and RICO allegations that would conform to 8(a)). Plaintiff regales in this *asbestos*–injury-focused law suit with allegations about what "non–parties" allegedly caught other "non–parties" doing in *silica* cases; or about what Plaintiff knew had been going on in asbestos litigation back in 1997 ("to which litigation *Plaintiff also* was not a party") albeit without arousing Plaintiff's "fraudulent litigation" suspicious 11 years ago; or the Complaint delivers an encomium on the industrial virtues of asbestos; or offers a general treatise of what all the "reliable" medical authorities have observed about their *statistical* conclusions regarding the incidences of asbestos–related diseases; *and* provides counsel's gratuitous running commentary on the personal lives of virtually every defendant, especially those with the temerity to assert a constitutional privilege against this 31,916 claim onslaught of unpleaded "frauds." Rule 12(f) speaks to pleadings like this. (See Motion to Strike) **But, for all the fascinating and useless information weighing down the 70 page Complaint and its vast exhibits, nowhere is it alleged that NSI's own non–testifying consultants or designated expert witnesses actually _contemporaneously_ reviewed a single one of *Dr. Ballard's* B–read reports on the x–rays he interpreted to form those reports and, *having done so*, found and reported back to NSI then that Dr. Ballard was wrong, mistaken, or that his *impressions* of any one of the specific films he saw was even so much as *unreasonable*. Why?** Moreover, where in the Complaint does NSI, specify these assertions have now been belatedly done (if they were, in the

7

due diligence runup to filing *this suit)*?  Instead, it is generally averred that Dr. Ballard *must have been* corrupt and NSI is prepared to demonstrate this *by . . . statistical methods*.  This approach presumably is also used to help Plaintiff overcome (translation: "discard") not only the 9(b) obligation to plead fraud in each and every instance it is charged to Dr. Ballard, <u>with</u> <u>particularity</u>, but also to give this Court a reasonable hint it could ultimately prove it.  (The government proposed to conduct the 2000 census by essentially these same "stastical" means, ignoring the constitutional mandate for an actual *enumeration*; the Supreme Court stopped *that*.  Rule 9(b) *will* stop *this*.)

The invocation of this district as a proper **venue** is another of the many missteps in this mangled RICO *onslaught*.  Paragraph 14 of the Complaint states the attenuated basis upon which this district was chosen for the trial venue.  But here, as in *CSX*, quoted *supra*, everything *allegedly* done "in" or "about" or "touching upon" *this* district is <u>on its face</u>, **a *time–barred* act, therefore immaterial to the demonstration of a "pattern" of racketeering activity**.  It matters not who lives or acted where if it was  already four years too late to sue them in any of those venues on the RICO "acts" charged.  The burden of proving proper venue is on the *Plaintiff*.  That burden does not shift to movant or the other defendants, *Dr. Ballard* is not suggesting a more *convenient* forum but, showing instead that, all RICO (and state) claims are comprehensively barred *everywhere* under the uniform, federal, four year (and the shorter, states') statute(s) of limitations.  So Plaintiff's Complaint has not properly alleged Section 1965(a) venue facts as to Dr. Ballard or in respect of any allegedly non time–barred "claim."  And, as was shown in *CSX, supra,* the "conspiracy" link to the venue collapsed when and because the predicate acts became time–barred.

The Court's RICO jurisdiction also evaporates with **NSI's lack of standing**. *National Organization of Women v. Scheidler*, 510 U.S. 249 (1994). And if there is not a **cognizable pattern** (as the Court observed in *CSX*), then neither can Plaintiff relate the non-existent (*i.e.,no longer actionable*) pattern *to* an **enterprise in a *manner*** made *actionable* by Title 18. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985). Thus, not every incident in the *alleged* "Plaintiff's"*alleged* corporate experience will constitute a civil RICO violation, least of all, the giving of Dr. Ballard's medical impressions, with which Plaintiff has only now belatedly decided it will disagree **(but without disallowing the benefits of the bargains struck in any of the 31,916 releases taken by North Brothers, Inc.**, or moving to rescind *those* contracts)[3].

RICO contains a **proximate cause element**; and only a ***direct* injury** from an actionable RICO violation is cognizable. *Holmes v. Securities Investors Protection Corp.*, 503 U.S. 258 (1992). Plaintiff here has actually *alleged* that <u>trial courts</u> in the 31,916 meritless cases frustrated its pursuits of discovery, and that NSI (and the attorneys it hired to defend NSI) became so "overwhelmed" by these cases coming at it in clusters that "NSI" settled, *apparently* economically (according to Exhibit V), thousands of claims for *less than the cost to litigate them* (and be, *thereby, possibly vindicated)*. Most courts perceive such choices as *voluntary* settlements. (Is it not ironic then that *Plaintiff* does not blanch from "overwhelming" Dr. Ballard *or this District Court* with 31,916 aggregated claims, in which fraud is pleaded only generally, as if to say to him and the Court "*you* figure out which ones of these we are saying were frauds and how.") As to the

---

[3]If there were an "$80 million" loss in this case, it would shrink by the value of the releases taken, a fact–intensive morass if ever there was one. Perhaps Defendants should not settle cases they do not think they owe.

alleged "interference" by various states' trial courts in Plaintiff's discovery rights, there is a deafening silence on something pretty important: the Complaint does not allege a single interlocutory appeal or any other effort made to keep its discovery or due process rights from being abused. (Has anyone heard of such a reported decision?) If then, the claimed inability of NSI's defense counsel to keep it from being "overwhelmed," or to assert and maintain NSI's defense against "bogus claims" in prior "rigged" adversary proceeding are to be credited as "well pleaded facts," then it appears that Plaintiff's "injury" was <u>not directly caused by the</u> <u>non–testifying consultant *Dr. Ballard*</u> but were caused by the unfortunate vagaries of *litigations* that NSI was either incapable of handling, or **chose** not to resist. RICO remedies are not available to litigants who come to court with injury claims freighted with such openly pleaded certain **deficiencies of *causation***. Neither are damages available to NSI as would be knight errant *for the 31,916 claimants* (see Counts III–V), or surrogate for other asbestos manufacturers/distributers. *Were* this a class action, NSI could not qualify as a Rule 23 class representative for either group, and this certainly is *not* a class action. NSI cannot sue for and has not pleaded for anything but *its own* derivative "injuries;" it cannot sue for injuries done to others, non–parties! These persons were supposedly *NSI's* adversaries.

Plaintiff has not alleged that Dr. Ballard assented to target *NSI* with the "enterprise's" predicate acts. It is not even alleged that Dr. Ballard was ever aware or told of the identity *of NSI*. The **target requirement** pervades civil RICO. *Abrahams v. Young & Rubican, Inc.*, 79 F. 3d 234 (2[d] Cir. 1996); *see also, Proctor & Gamble Co. v. Amway Corp.*, 242 F. 3d 539 (5th Cir. 2001), indicating the importance of the **target requirement** when, as here, NSI may never be able to actually prove that *its "own"* reliance upon any but economic considerations animated its 31,916

settlements (as opposed to actual but unpleaded "misinformation" **supposedly to be found in medical reports which Plaintiff chose not to assay** before writing checks.

The **nature or character of *Dr. Ballard's* personal role or actions,** only vaguely and conclusorily alleged in the Complaint, is another point of objection. Dr. Ballard was alleged to be a non–testifying consultant to *personal injury lawyers*, not a negligent agent of *NSI*, the *alleged* adversary of those 31,916 claimants (whom NSI now "champions" in Counts III–V). The West Virginia District Court held in *CSX*, in exactly this context, in Document No. 170 that *even the claimants' lawyers* (who engage such private consultants) have **no duty** to analogously situated plaintiffs (*not to CSX, not to NSI*); and it remains to be seen that NSI is a plaintiff:

> . . . The [West Virginia] Supreme Court of Appeals [answering a certified question] stated that it could find **no justification for imposing a duty of care in favor of an opposing party upon counsel."** [*Clark v. Druckman*, 624 S.E. 2d 864, 869 (W. Va. 2005)].
>
> . . . Similarly, the Court in *Tappen v. Ager*, 599 F. 2d 376 (10th Cir. 1979), . . . reasoned that **"an adverse party cannot, under the law, rely on the opposing lawyer to protect him from harm."** *Tappen*, 599 F. 2d at 379. Rather, **because of the adversary nature of lawsuits, a "lawyer's duty of care is to his client and to the Court"** not to the opposing party.
>
> . . . **["T]he creation of a duty in favor of an adversary of the attorney's client would create an unacceptable conflict of interest which would seriously hamper an attorney's effectiveness as counsel for his client."** *Clark*, at 869.
>
> Nonetheless, CSX maintains that the Pierce firm was under a special duty to ensure that the information it presented to CSX was accurate.
>
> **Contrary to CSX's assertions . . . CSX was not required to settle each and every claim based *only* on the information provided by the plaintiff's (sic) attorneys.**

*Id.*, at 5, 8, 9, 10 (emphasis added)  Dr. Ballard, as a consultant *to Plaintiffs' attorneys* **allegedly suing NSI,** was at least one step *further* removed from any such non–existent "duty." As Justice

Thomas explained in *Beck v. Prupis*, 529 U.S. 494 (2000) "an injury caused by an overt act that is **not** an act of racketeering activity or *otherwise wrongful under RICO"* does not sufficiently state a RICO conspiracy claim.  (emphasis added)  Plaintiff, thus, has not sufficiently pleaded an injury suffered by reason of a RICO violation but rather by the vagaries of being in civil litigation that Plaintiff plainly chose not to vigorously, or perhaps even *minimally,* defend.  After all, how much defense expense would a defendant prudently incur to discover and defend cases Plaintiff says (at paragraph 159 of the Complaint) it settled for as little as **$50?  Nowhere in the Complaint is there an allegation that**, *if the 31,916 individual claimants had each filed an individual lawsuit, that NSI's "costs of defense," (even in the numerous cases Exhibit V shows it settled before any suits were filed (see Exhibit V to Complaint) or its costs of 31,916 separate settlements,* **would have been less expensive than the unspecified sums it "lost" as alleged by being sued in  "mass tort" contexts.**  (No court would have taken such an allegation seriously.)  Rule 9(g) doesn't allow such an "oversight."  NSI is even suing to get back settlements paid before the "scheme" allegedly launched.  See Exhibit V.

Where, as here, **mail fraud and wire fraud** are *claimed*, <u>even if not pleaded particularly per Rule 9(b)</u>, it is essential also that **reliance** be pleaded and established.  Without any particularity as to  a single one of the 31,916 claims uttered against NSI, one must intuit *Plaintiff's* reliance, because: <u>not once</u> in the Complaint does NSI allege: a specific mailing or item that <u>it</u> (as opposed to North Brothers) read or relied on in settling <u>any</u> <u>claim</u>, let alone state *what statements <u>found therein</u> made it do so,* or allege what NSI's own medical experts said at the time that failed to dissuade NSI from making the resulting payments.  President Reagan advised the wary to

"Trust, *but verify*."  NSI claims it was harmed by it settling tens of thousands of claims *whose merits it did not know . . . or test*.

Of course reliance must be *justifiable*; but first there has to be pleaded concrete **demonstration of reliance**, not a sweeping gloss about of 31,916 acts of disbursement only lately "repented of."  There *are* no civil actions for "do–overs" for unilateral haphazardness.  And, is it not self–evident that, while this aggregation of "RICO" flaws in the Complaint spoils the **jurisdiction of the District Court** over the federal question in this civil action, so too do they spell the doom of the "pendant" claims in Counts III–V.  That is, unless the Court nevertheless *wants* to exercise its *discretion* to unfold whether there are any "merits" related to the 31,916 individual claims, all evidently time–barred, and most so pleaded as to be *well below* the individual $75,000 threshold for diversity–based  jurisdiction.  Even those few that are not so small are improbably "connected" to *this District* and/or time–barred to boot.

*See* too *Lerner v. Fleet Bank*, 318 F. 3d 113 (2d Cir. 2003).  Dr. Ballard is not sufficiently alleged to have been personally involved in the **operation and management** of NSI's confected "enterprise."  Section 1962(c) liability (Counts I and II) is limited to those who run the affairs of the enterprise alleged (about which "enterprise" more later).  We have already shown, by Exhibit V and through the reasoning in Document No. 265 in CSX, the unavailability of the "conspiracy" claim.  But absent a *viable* conspiracy under Section 1962(d), a defendant *situated, like Dr. Ballard allegedly was*, cannot be sued under Section 1962(c).  *Reves v. Ernst and Young*, 507 U.S. 170 (1933).  (All these flaws obviously infect the pleading as to all defendants similarly situated.)

Plaintiff is enthralled with the catch–all "Defendants."  Indeed, it serves as a handy substitute for Rule 9(b) particularity.  Lumping all defendants together is not proper RICO

pleading. *Vicom, Inc. v. Hambridge Merchant Services, Inc.*, 20 F. 3d 771, 778 (7th Cir. 1994) It's certainly not a procedural synonym for 9(b) compliance. Because Plaintiff has (but only *generally*) alleged that the <u>contents</u> of all of the thousands of mailings or wire missives were **themselves** false and fraudulent but has not said *how* (or when they were sent, etc.), much that is material and *essential* is missing from the Complaint:

> **In cases in which plaintiff claims that specific statements or mailings were <u>themselves</u> <u>fraudulent</u>, *i.e.*, themselves contained false or misleading information, the complaint should <u>specify</u> <u>the fraud</u> involved,** identify the parties responsible for the fraud, and when and where the fraud occurred.

*In re Sumitomo Copper Litigation*, 995 F. Supp. 451, 456 (S.D. N.Y. 1998). The Standing Order is in agreement. *This*, of course, Plaintiff has assiduously avoided doing. When the claim is for fraud by mailing/wiring materials of fraudulent <u>*content*</u>, NSI <u>must</u> so plead the particulars; NSI cannot have it both ways.

Plaintiff in this case has even resorted to **pleading**, *contra* to Rule 9(b), **on the basis of "examples" or even of "information and belief."** But, in a case where Plaintiff claims to have been *induced* to settle 31,916 times by documents that <u>*first*</u> were all <u>*first*</u> placed <u>***in its hands***</u> by one or more of the Defendants **and upon which it supposedly <u>*then*</u> relied**, this is not proper pleading of a RICO claim. *See Furman v. Cerrito*, 828 F.2d 898, 900 (2d Cir. 1987), cert. den., 473 U.S. 922 (1988); *See also Philan Inc. v Hall & Co.*, 712 F. Supp. 339 (S.D.N.Y. 1989). There is **no particularity** in the Complaint as to any "fraud" alleged as to any of the 31,916 claims, only occasional, comparative juxtapositions of a handful of claims in asbestosis cases to what the same claimants contended years *later* or in *silica* cases. It remains to be alleged not only that any specific claimant <u>did not have an indication of or have the disease</u> which formed Dr.

14

Ballard's impression of it (*i.e.*, that Dr. Ballard was *wrong*), or to be alleged that Dr. Ballard's *specific* impression of a *specific* claimant's *specific* x-ray film (*shot by someone else*) was not even *reasonable*. Instead, the entire complaint only speaks in sweeping generalities. *Everything* was supposedly "fraudulent" but Plaintiff points specifically to nothing at all. Plaintiff either will not bother to *plead* or cannot plead as required by Rule 9(b) for a RICO claim.

This Fifth Circuit position on this style of impermissible pleading is quite clear; such complaints are not sufficient under Rule 12(b)(6). *Hart v. Bayer Corp.*, 199 F.3d 247 (5th Cir. 2000); and the Fifth Circuit even approves **dismissal** of such RICO actions if the Plaintiff is unable to cure the defects. The Eighth Circuit says that *a Rule 9(b) violation* may even serve for granting summary judgment. *Murr Plumbing, Inc. v. Scherer Financial Services Co.*, 48 F.3d 1066 (8th Cir. 1995).

What of the **intent** of Dr. Ballard? The Fifth Circuit is not averse to imputing an intent to defraud to a RICO defendant who has dealt with reckless indifference to the truth or falsity of his misrepresentation. *Landry v. Airline Pilots Assn Int.*, 901 F.2d 404, 429 (5th Cir. 1990). But the Fifth Circuit has not approved such an "imputation" of fraud when the Plaintiff has failed to plead (here failed at least 31,916 times) wherein even one of Dr. Ballard's impressions was a "lie" or even indifferent to the truth. Without *such particularity*, there is no *imputation of intent*!

In *Bell Atlantic Corp. v. Twombley,* the Supreme Court required all **conspiracies** to be pleaded particularly. 127 S. Ct. 1955 (2007). Thus Plaintiff's "conspiracy" claim is not only time-barred, as in *CSX*, it *also* was not well and particularly pleaded:

> . . . [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions,

> and a formulaic recitation of the elements of a cause of action will
> not do.

*Id.,* at 1964. *See also, Kress v. Hall-Houston Oil Co.*, C.A. No. 92-543, 1993 U.S. Dist. Lexis 6350 (D.N.J., May 12, 1993).

As to the **"enterprise"** that Plaintiff has decided to formulate and to allege, the Fifth Circuit requires that it be **"continuous."** *But see* paragraph 39 and 98 of the Complaint as regards *Dr. Ballard*; *see also Landry, supra*. Worse, as Plaintiff alleges, there was an **"association in fact"** enterprise, then the Complaint would have to plead the *Turkette* criteria from *United States v. Turkette*, 452 U.S. 576 (1981). Plaintiff has missed them all. And were those not problems enough, the Fifth Circuit also expressly requires that the "enterprise"alleged must be such that <u>no corporate *defendant* can be one of those who associate-in-fact to comprise it</u>. *Crowe v. Henry*, 43 F.3d 198, 206 (5th Cir. 1995), says Section 1962(c) does not allow that, and *Crowe* requires <u>*dismissal*</u>; yet Plaintiff has named corporate defendants and *pleaded* they comprise part of the non-existent "enterprise." **(See Complaint at paragraph 39 and 203, 210.)** Plaintiff is bound to this spurious allegation and would have to prove the "enterprise" it pleaded. *This* would fail and, with it, all RICO claims. *See also, In Re Burzynski*, 989 F.2d 733, 743 (5th Cir. 1993).

Neither does Plaintiff plead the **separate "ascertainable structure"** for the guidance of the *non-existent* "enterprise," a failure that the Ninth Circuit has specifically warned that, if not pleaded particularly, "<u>would permit proof of a conspiracy to satisfy the enterprise element of §</u> <u>1962(c)</u>" *Chang v. Chen*, 80 F.2d 1293, 1300 (9th Cir. 1996). This is precisely why the Fifth Circuit rigorously enforces a substantive, not formalistic pleading of the *Turkette* factors. *Burzynski, supra*, at 743.

16

Neither has Plaintiff properly alleged **enterprise *continuity*.** *R.A.G.S. Couture, Inc. v. Hyatt*, 774 F.2d 1350 (5th Cir. 1985); *see also Burzynski*, at 743. (See also, cases quoted *infra*, at pp. 18–19.)

On June 19, 2009, the Fifth Circuit held that damages may not be recovered under RICO where the Plaintiff fails to establish wherein or how it would have been injured less, but for the predicate acts of fraud allegedly committed. In *Ducote Jax Holdings, LLC v. Bank One Corp*. No. 08–300037 (on appeal from Eastern District of Louisiana (U.S.D.C. No. 04–1943); the Fifth Circuit reversed the damages so awarded at trial. NSI's generalized "$80 million" injury claim does not particularize what NSI *would have paid* in settlement or incurred in defense costs *anyway* in defending 31,916 individually brought lawsuits or allege why it should not get back the part of that money paid out before the "enterprise" got rolling. This is not sufficient to show the special damages Plaintiff claims but has not pleaded and cognizable RICO injury.

Nor has Plaintiff specifically pleaded **which** of Dr. Ballard's allegedly fraudulent mailings, etc. **proximately caused** *Plaintiff* harm **in a *particular* claim**. The Supreme Court approved dismissal for such a failure to plead. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 126 S.Ct. 1991 (2006). The Eleventh Circuit has correctly noted that the Supreme Court wants this topic carefully examined at the pleadings stage, to "carefully evaluate whether the injury pled has proximately caused by the claimed RICO violations." *Williams v. Mohawk Industries, Inc.*, 465 F.3d 1277 (11th Cir. 2006). Plaintiff's assertion that "trickery," not economics and "costs of defense" considerations, animated **all** 31,916 settlements (**see Complaint ¶ 20)** will certainly bow under the weight of such a judicial inquiry.

No RICO claims have been stated against Dr. Ballard. Dismissal is in order.

17

**Insufficient State Law Claim Allegations:**  The Complaint (and Corporate Disclosure Form filed of record by NSI) indicates a separate corporate entity *North Brothers*, *Inc*. was the defendant in the 31,916 claims referenced in Exhibit V to the Complaint.  It is **axiomatic** under state law that a shareholder in a corporation has **no individual cause of action** for diminution of the value of its stock in a corporation harmed by the acts of a third party.  NSI as shareholder in North Brothers, Inc. would have sustained neither a **direct injury, distinct from that to North Brothers, Inc.**, nor any **injury to itself directly and/or proximately caused** by this Defendant.

And as respects these state law claims (none of which were themselves under the aegis of the RICO four year statute of limitations), for the reasons explained in *CSX*, *supra*, every state law claim of North Brothers, Inc. would have been **time–barred** under the consistently shorter (than four years) statutes of limitation of the states where *North Brothers'* "claims" would have allegedly arisen.

Furthermore, although North Brothers, Inc. is not the Plaintiff here, neither NSI nor North Brothers, Inc. could bring suit on the state law "claims" asserted in the action because **neither is qualified to do business in this State.**  In those *Erie*–controlled portions of the action, Section **79–4–15.02** precludes NSI's utilization of the District Court situated in this state in respect of its diversity of citizenship based claims.  (See Cumulative Exhibit "A" to the Motion.)

**A review of Exhibit V to the Complaint will show that the 31,916 underlying, allegedly "bogus" asbestos cases listed there: some either did not involve the payment of <u>any</u> money to a claimant (the "TBS" cases) [to be settled][4], or *only involved* North Brothers paying *less than***

---

[4]Why would NSI now settle claims it alleges it is <u>now</u> on supposed notice are supposedly "bogus"?

**$75,000**, exclusive of interest and costs to any particular claimant (again Plaintiff has not specifically pleaded its special defense cost damages per Rule 9(g), as incurred in each separate one of the 31,916 claims to settle those individual allegedly "bogus" claims). As to any individual claims as to which North Brothers paid *more than* $75,000 in settlement, and as to which *Dr. Ballard* was allegedly somehow "connected," Plaintiff's own Exhibit V shows each such case was already **time–barred** in the state where each arose before this action was filed, as demonstrated by the reasoning in *CSX,* at Document No. 265.

　　To cap off all these problems, the Fifth Circuit precedent on pleading claims that implicate "fraud," *euphemisms* for "fraud," or aiding and abetting "fraud," has been wholly ignored in the Plaintiff's Complaint.

　　The Fifth Circuit had already said in *Tel–Phonic Services, Inc. v. TBS International, Inc.*, 975 F. 2d 1134 (1992):

> Rule 9(b) requires particularity in pleading the "circumstances constituting fraud." **This particularity requirement applies to the pleading of fraud as a predicate** *act in a RICO claim* <u>*as well*</u>**.** (citations omitted)

> **At a minimum**, Rule 9(b) requires allegation of the particulars of "time, place and **contents of the false representations** as well as the identity of the person mailing the misrepresentation and what he obtained thereby." 5 C. Wright & A. Miller, *Federal Practice and Procedure* (etc.). . . .

> <u>**The Complaint . . . generally fails to specify**</u> <u>***the content of any***</u> <u>***misrepresentation***</u>**.**

*Id.*, at 1138–39 (emphasis added)

　　Plaintiff purports to link Dr. Ballard to "thousands" of fraudulent representations without any of this required particularization as to any of the claims. This is not allowed by the Fifth

Circuit. In an analogous case in the New York District Court, an "asbestos defendant" plaintiff pleaded similarly, leaving out all the fraud particulars; the case was dismissed; **it involved 900 supposedly "bogus" asbestos claims:**

> Because [Plaintiff] Holdings **has not alleged which of the over 900 cases specifically referenced in the Complaint** . . . included . . . **false testimony**, this claim must be dismissed. . . . **A failure to specify any individual false statements and the dates and times they were transmitted is fatal to Holdings' claims.**

*G–I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 521 537–38 (S.D.N.Y. 2002) (This holding is course authority also for the insufficiency of the pleading of the RICO claims briefed above.)

Plaintiff has not pleaded as to Dr. Ballard a single state law claim for common law fraud with the particularity required by Rule 9(b), as shown above. And as was shown in, *inter alia*, the *CSX* opinion quoted above, Dr. Ballard was not under any duty to NSI, as a consultant to counsel for any party *alleged* to be adverse *to* NSI. Likewise the Complaint does not allege that Dr. Ballard made purposeful or negligent representations to anyone with standing or right of action to sue him in the "premises" asserted.

This series of flaws defeats the claims of direct wrongdoing by Dr. Ballard as well as the "aiding and abetting" allegation which Plaintiff was careful not to position under the RICO counts. Plaintiff has not pleaded, concerning *Dr. Ballard*, any act sufficient to constitute aiding and abetting *anything*. *See, e.g., Simon v. Weaver*, 327 F. Supp. 2d 258, 262 (S.D.N.Y. 2004). When it is "fraud" that is allegedly being aided and abetted, 9(b) requires particularization.

Therefore Plaintiff has not validly stated any state law claim that could "append" itself to the insufficiently pleaded *RICO* claims discussed above. There is nothing before this Court which

could be adjudicated on its "merits" or to which, under the law, this Defendant would be obliged to respond.  The action should be dismissed.

For any one, or more, of the substantive and procedural reasons set forth hereinabove, the Complaint has failed to state any claims against Dr. James W. Ballard upon which relief could be granted to National Service Industries, Inc. (and the Complaint must be now *finally* dismissed upon many of the grounds asserted above).  Dr. Ballard prays for that relief.

Respectfully submitted,

JAMES W. BALLARD, M.D.


BY:     s/  JACKSON H. ABLES, III
        OF COUNSEL

JACKSON H. ABLES, III - BAR # 1027
jables@danielcoker.com
DANIEL COKER HORTON & BELL, P.A.
4400 OLD CANTON ROAD, SUITE 400
POST OFFICE BOX 1084
JACKSON, MISSISSIPPI   39215-1084
TELEPHONE:  (601) 969-7607
FACSIMILE:  (601) 969-1116

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 13, 2009, I electronically filed the foregoing with the Clerk

of the Court using the ECF system which sent notification of such filing to the following:

> John A. Banahan, Esq.
> Ashley E. Calhoun, Esq.
> Marcy B. Croft, Esq.
> Jeanette S. Eirich, Esq. (PHV)
> Jessica B. McNeel, Esq.
> O. Stephen Montagnet , III, Esq.
> Samuel David Norquist, Esq.
> John M. Seebohm, Esq. (PHV)
> David M. Setter, Esq. (PHV)
> Walter G. Watkins, Jr., Esq.

s/ JACKSON H. ABLES, III