# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# JACKSON DIVISION

| | |
|---|---|
| NATIONAL SERVICE INDUSTRIES, INC., ) <br> F/D/B/A NORTH BROTHERS, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> ) <br> v. ) <br> ) <br> JAY T. SEGARRA, M.D. ) <br> RESPIRATORY TESTING SERVICES, INC. ) <br> CHARLES E. FOSTER ) <br> J. MICHAEL FITZGERALD, ESQ. ) <br> CHRISTOPHER LINN TAYLOR ) <br> JAMES W. BALLARD, M.D. ) <br> PHILLIP H. LUCAS, M.D. ) <br> JOHN DOE DEFENDANTS 1-20 ) <br> ) <br> Defendants. ) | Civil Action No. <br> 3:09CV83HTW-LRA |

### PLAINTIFF'S SUPPLEMENTARY RESPONSE IN OPPOSITION TO REPLIES TO MOTIONS TO DISMISS OF DEFENDANTS SEGARRA, FITZGERALD, BALLARD AND LUCAS AND DEFENDANT BALLARD'S RULE 12(f) MOTION

Plaintiff, National Service Industries, Inc. f/d/b/a North Brothers, Inc. ("NSI"), through its counsel, Forman Perry Watkins Krutz & Tardy LLP, submits this Supplementary Response in Opposition to Replies to Motions to Dismiss of Defendants Dr. Jay T. Segarra, J. Michael Fitzgerald, Dr. James W. Ballard and Dr. Phillip H. Lucas (Documents 82, 83, 84, 86 and 87), and to Dr. Ballard's Reply to Response to Rule 12(f) Motion (Document 85). In support, NSI states as follows:

This Supplementary Response addresses limited issues raised for the first time in the Defendants' replies in support of their Rule 12 motions to dismiss, and Dr. Ballard's

1

reply in support of his Rule 12(f) motion.  NSI has previously addressed the remaining issues argued by the Defendants in NSI's previously filed Responses (and Memorandum) to the subject motions.

**Dr. Ballard's Reliance On Information From Exhibits Outside The Complaint Shows His Motion to Dismiss Pursuant To Rule 12(b)(6) Based On Alleged Lack of Standing Is Improper And Should Be Denied**

Defendant Dr. Ballard's "Reply to Response to 12(B)(6) Motion" contains exhibits comprised of excerpts from Form 10-K reports filed by plaintiff, NSI, as well as a business journal article about NSI.  Dr. Ballard now seeks dismissal pursuant to Rule 56 based on his mischaracterization of information contained in those Form 10-K excerpts and the article.  For example, Dr. Ballard argues that NSI did not retain North Brothers' liabilities on product liability claims (as opposed to "environmental claims") when NSI sold the North Brothers' business.  However, the excerpts Dr. Ballard submits from the 2001 Form 10-K plainly state: "Among the product liability claims to which the Company is subject are claims for personal injury or wrongful death arising from the installation and distribution of asbestos-containing insulation, primarily in the southeastern United States, by a previously divested business of the Company."  Ballard Cumulative Exhibit B, Document 82-2 at p. 44 of 54.

The extraneous Exhibits submitted by Dr. Ballard, which go well beyond the allegations of the Complaint, are improper for purposes of determining the motions filed pursuant to Rule 12(b)(6), and must be disregarded by the Court.  *Strong v. Department of Army*, 414 F. Supp. 2d 625, 629 (S.D. Miss. 2005) (citation omitted) ("The court must accept the well-pleaded facts as true and view them in the light most favorable to the plaintiff.")  The mere fact that Dr. Ballard argues in his Reply based upon the newly

tendered Exhibits shows that Dr. Ballard's motion under Rule 12(b)(6) is inappropriate, and should be denied, because they raise, at best, disputed issues of fact.

The well-pled facts of NSI's Complaint are that NSI formerly did business as North Brothers, and NSI has been sued and incurred defense and settlement costs, and made settlement payments, on the claims in Exhibit V to the Complaint. Complaint ¶¶ 3, 6, 9, 10, 29 and 199-200. Although those extraneous submissions are beyond the purview of a Rule 12(b)(6) motion, the Form 10-K excerpts and business journal article do not contradict any of those allegations of the Complaint. Just as the 10-K excerpts do not support Dr. Ballard's desire to show that NSI did not retain North Brothers' asbestos personal injury liabilities, the reports that NSI had paid $47 million in settlements as of May 2001 simply do not contradict NSI's allegations in its Complaint, which was filed in 2009, that NSI has paid $80 million in settlements of the underlying claims in this RICO action. Moreover, that NSI has been sued in thousands of asbestos personal injury cases in numerous courts, as alleged in the Complaint, is sufficient to show NSI's standing. Simply put, NSI properly pled the basis for its standing to bring the claims in the Complaint, and there is no basis under Rule 12(b)(6) for Dr. Ballard's argument that NSI lacks standing.

### **Dr. Ballard Mischaracterizes Facts Alleged By NSI In An To Effort Challenge Allegations That NSI Made Settlement Payments Based On The False Medical Records And Reports**

Dr. Ballard now argues for the first time in his Reply that NSI must have settled the subject cases without the Defendants' false reports, but he once again twists up allegedly disputed facts to support his argument. NSI has plainly set forth in its Complaint and RICO Statement that it paid the subject claims following, and based on,

3

submission of the false medical reports.  *See* Complaint ¶¶ 10 and 199-200, and RICO Statement ¶ 5.b.i.  That agreements to settle large blocks of cases were entered into with personal injury lawyers before the cases were submitted for payment does not mean the cases were settled and paid without those false reports.  No Defendant other than Dr. Ballard seems to harbor the impression Dr. Ballard claims to have.  Dr. Ballard's misguided argument about "causation" simply illustrates that there are disputed issues of material fact to be determined.  There is, however, no pleading deficiency because it is plainly and clearly alleged that NSI made settlement payments after receiving, and based upon, the submission of the Defendants' reports.  Moreover, the cases which were the subject of the settlement agreements were filed based on the false reports the Defendants supplied to the personal injury law firms that filed the cases against NSI.  NSI also plainly alleges that the x-ray and diagnostic reports as set forth in the Exhibit V cases were false, including the reports by Drs. Ballard, Segarra and Lucas.

### **Dr. Ballard Ignores Applicable Law As To The Structure And Composition Of Association-In-Fact Enterprises**

Dr. Ballard's Reply addresses the United States Supreme Court decision in *Boyle v. United States*, 129 S.Ct. 2237 (2009), for the first time, and attempts to argue that NSI misstated the holding of that case based on quoted language that, "succinctly put," an association-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct."  *Boyle*, 129 S.Ct. at 2243 (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).  However, that is exactly how the Court referred to the minimal structural features of an association-in-fact enterprise.  NSI's Complaint alleges the Defendants' purpose, the relationships among the Defendants, and

the longevity of the enterprise, and NSI's Response to the Rule 12(b)(6) motions to dismiss shows that the enterprise alleged has the requisite structure.

Dr. Ballard also argues in his Reply that the association-in-fact enterprise cannot include a corporation, but cites no contrary case law, Fifth Circuit or otherwise. The Fifth Circuit and numerous other circuits allow for association-in-fact RICO enterprises to be composed of corporations and individuals. *United States v. Thevis*, 665 F.2d 616, 625 (5th Cir. 1982), *superseded on other grounds* (rejecting defendants' argument that a group of individuals associated in fact with various corporations could not comprise the enterprise); *Alcorn County v. United States Interstate Supplies, Inc.*, 731 F.2d 1160, 1168 (5th Cir. 1984), *overruled on other grounds* (approving an association-in-fact enterprise comprised of individuals and a corporation). *See also United States v. Feldman*, 853 F.2d 648, 655 (9th Cir. 1988); *United States v. London*, 66 F.3d 1227, 1243 (1st Cir. 1995); *Atlas Pile Driving Co. v. DiCon Fin. Co.,* 886 F.2d 986, 995 n. 7 (8th Cir. 1989); *United States v. Perholtz*, *et al.,* 842 F.2d 343, 352-53 (D.C. Cir. 1988); *United States v. Aimone,* 715 F.2d 822, 828 (3d Cir. 1984); *Bunker Ramo Corp. v. United Bus. Forms, Inc.*, 713 F.2d 1272, 1285 (7th Cir. 1983).

### **Defendants Misstate The Holdings Of The Controlling *Love* Decision**

Defendants, oddly, for the first time address in their Replies the controlling Fifth Circuit decision about accrual of the RICO statute of limitations as set forth in *Love v. National Medical Enterprises*, 230 F.3d 765 (5th Cir. 2000). They further misstate the case's holdings, as well as mischaracterize NSI's arguments. Defendants Segarra and Fitzgerald improperly argue that NSI advocates application of a rule requiring discovery of a "pattern" of racketeering activity, or based on the "last predicate act," to determine

5

when the statute of limitations began to run.  This ignores not only NSI's plainly stated arguments in its Memorandum in support of NSI's Response to the Rule 12(b)(6) motions, but the Fifth Circuit's holdings in *Love* as to the application of the controlling "injury discovery" rule.  *See* NSI Memorandum, Document 75 at pp. 18 - 20.

In *Love*, the Fifth Circuit held that Blue Cross' knowledge that the defendants had committed fraud more than four years before Blue Cross brought its lawsuit was not enough to begin the running of the statute.  230 F.3d at 777.  At that time, Blue Cross did not know *how* the fraud had been committed, namely, that the defendants had enlisted doctors to falsify diagnoses and medical records; nor did Blue Cross know that one of the defendants had made claims containing such diagnoses and medical records.  *Id.* at 778. Blue Cross contended that this information about the method of the fraud was needed for Blue Cross to discover that it had been injured.  The court held that, under the injury discovery rule, Blue Cross' claims did not accrue until it "knew, or should have known, that it suffered an injury caused by that allegedly fraudulent conduct."  *Id.* at 777.  *Love* is the controlling law in the Fifth Circuit, and has been recently cited.  *See DeShazo v. Nations Energy Co., Ltd*, 286 Fed.Appx. 110, 117 (5th Cir. 2008) (comparing Canadian law and "separate accrual" rule based on "injury discovery" adopted by the Fifth Circuit in *Love*).

The Fifth Circuit, in the *Love* decision, also applied the fraudulent concealment doctrine, which tolls the limitations period until the claimant discovers or with reasonable diligence should have discovered the concealed fraud, in deciding that there existed material issues of fact as to the application of the statute of limitations to claims paid by Blue Cross *more* than four years before Blue Cross commenced suit.  *Id.* at 779.  Blue

6

Cross, in response to a summary judgment motion, presented affidavits showing acts of concealment by the defendants. NSI's case has not proceeded to the stage of summary judgment motions following discovery. The allegations of active concealment by members of the enterprise are sufficient at this stage of the case to preclude dismissal based on payments having been made more than four years before commencement of the action. Particularly since some of the Defendants asserted the Fifth Amendment in refusing to answer questions about their screening operations, and have refused to produce documents in MDL 875, it is more than reasonable to expect that discovery will reveal further acts of concealment of their fraud. *See Carter v. Jackson Public School Dist.*, 2008 WL 4187480, at *2 (S.D. Miss. 2008). NSI contends that the statute did not begin to run on NSI's RICO claims until at the earliest after Judge Jack's ruling in MDL 1553 in June 2005, and the production of litigation screening documents in MDL 875 in 2006, because of the Defendants' efforts to conceal the fraud. Prior to that, NSI did not know, and in the exercise of reasonable diligence could not have known, of its injury - the settlement payments **induced by fraud**.

The Defendants seek to have the statute of limitations triggered by the filing of the subject personal injury claims against NSI, or at least by NSI's payment of the claims in settlement. However, the Fifth Circuit has adopted the "injury discovery" accrual rule, as distinct from the "injury occurrence" rule. *Id*. at 774. Under the injury occurrence rule, the statute would begin to run when the defendant commits an act in violation of the RICO statute that injures the plaintiff's business. *See Klehr v. A.O. Smith*, 521 U.S. 179, 198 (1984); and *Rotella v. Wood*, 528 U.S. 549, 554 n. 2 (2000). In contrast, under the Fifth Circuit's injury discovery rule, the statute does not begin to run until the plaintiff

7

has or should have *discovered* the injury. *Love*, 230 F.3d at 773. A plaintiff must know more than that it has made a payment to know that it has been "injured." "Injury" is defined as "[t]he invasion of any legally protected interest of another" in Black's Law Dictionary, 5th ed. (1979) at 706. Therefore, knowledge of the injury requires knowledge of the invasion of a legally protected right. The application of the Fifth Circuit injury discovery rule requires exactly that – knowledge of an injury caused by the **fraudulent conduct**. *Love*, 230 F.3d at 777.

In addition, Defendants Lucas and Segarra argue that NSI's allegations of fraudulent concealment are merely conclusory and speculative, and are therefore insufficient to raise fraudulent concealment to toll the statute of limitations. Defendant Lucas' reliance on *Topalian v. Ehrman*, 954 F.2d 1125 (5th Cir. 1992), is misplaced because it involved adjudication on a summary judgment, not a Rule 12(b)(6), motion. *Id*. at 1129. In opposing a motion for summary judgment, it was insufficient to assert only that the "defendant intentionally and fraudulently omitted and concealed all relevant facts from Plaintiff." *Id*. at 1133. However, this Court is presented here with Rule 12(b)(6) motions and the issue is the adequacy of the allegations of the Complaint, not whether the record presents material issues of undisputed fact following relevant discovery as presented in affidavits or through other material submitted as exhibits, including deposition testimony of the defendants. In addition, NSI's allegations of fraudulent concealment are not merely conclusory. NSI has alleged that members of the enterprise have refused to answer questions and produce documents in reliance on the Fifth Amendment, have failed to maintain and have destroyed documents, have refused to produce documents, have concealed contradictory diagnoses, and have given false and

misleading testimony, including specifically that Drs. Segarra, Ballard and Lucas have refused to produce documents pursuant to subpoena in MDL 875. *See* Complaint ¶¶ 179 – 198. Contrary to Defendant Lucas' assertion, similar allegations were found to be sufficient under Rule 12(b)(6) as against eight defendants in *Summer v. Land & Leisure*, 664 F.2d 965, 969 (5th Cir. 1981). The "conclusory" allegations about just two of the Summer case defendants that required amendment of the complaint with more specificity are not set out in the opinion. *Id*. at 970-71. NSI's allegations of concealment are not merely conclusory. Nor can it be said that NSI's allegations are insufficient to support an expectation that discovery will reveal further evidence of concealment by the Defendants. Carter, 2008 WL 4187480, at *2.

Finally, in any event, NSI's Complaint includes underlying claims filed and settled within four years before NSI brought suit that are actionable under the separate accrual rule. *Love*, 230 F.3d at 775. With respect to claims filed and settled more than four years prior to commencement, NSI's allegations are sufficient under Rule 12(b)(6) to place at issue accrual under the injury discovery rule, and tolling by fraudulent concealment.

### Dr. Ballard's Reliance On The Exhibits To His Reply In His Statute of Limitations Argument Underscores Factual Issues Precluding Dismissal Under Rule 12(b)(6)

Defendant Ballard's reply on the statute of limitations relies upon a misplaced factual assertion that cases were paid in settlement before NSI, as the defendant, was provided with the false reports, as well as on Exhibit B, the Form 10-K excerpts. As discussed above, Defendant Ballard mischaracterizes both NSI's allegations and information from the 10-K excerpts. Further, his argument simply underscores that there

9

are disputed fact issues raised by the Complaint that cannot be determined at this stage based on a Rule 12(b)(6) motion.

### Defendants' Arguments Ignore Nationwide RICO Personal Jurisdiction, And Must Fail Based On NSI Adequately Pleading Its RICO Claims And Its Standing

In their respective replies, Mr. Fitzgerald and Dr. Ballard for the first time argue lack of personal jurisdiction based on their assertions that the RICO claims are fatally defective. NSI incorporates its response with respect to allegations that the RICO claims fail to state a claim as to the new arguments that the Court lacks personal jurisdiction based on the alleged defective pleading of the RICO claims. NSI Response to Rule Motions to Dismiss and Memorandum in Support, Documents No. 74 (Motion) and 75 (Memorandum).

Dr. Ballard further now primarily argues lack of personal jurisdiction and venue based on NSI's alleged lack of standing relying on his submission to the Court, for the first time, of Exhibits, including excerpts of certain NSI SEC Form 10-K filings and a news journal article on damages and settlement structures. Dr. Ballard's submission of new Exhibits does nothing to contradict the well-pled facts of NSI's Complaint that that NSI formerly did business as North Brothers, and NSI has been sued and incurred defense and settlement costs, and made settlement payments, on the claims in Exhibit V to the Complaint. Complaint ¶¶ 3, 6, 9, 10, 29 and 199-200.

Defendants, in fact, concede that personal jurisdiction is obtained through nationwide service of process in RICO actions, where the Plaintiff has standing, as NSI does, and where the RICO allegations are sufficient to state a claim for relief, as are NSI's allegations. The legal authority cited by Dr. Ballard relates only to cases where

10

jurisdiction is dependent on minimum contacts with a state,[1] and provide no authority contradicting that submitted by NSI regarding the nationwide service of process for RICO. Dr. Ballard also continues to mischaracterize NSI's arguments and allegations.[2]

### Dr. Ballard's Reply To Response To Rule 12(f) Motion Mischaracterizes NSI's Allegations And Arguments, And Improperly Seeks Unsupported Factual Findings

Dr. Ballard's reply reveals his Rule 12(f) Motion to Strike for what it truly is - an improper motion to dismiss the Complaint. Dr. Ballard raises new allegations of fact which are outside of the Complaint, mischaracterizes the allegations that *are* in the Complaint, misstates case law, and makes extraordinary leaps of logic. He then asks the Court to make factual determinations most favorable to Dr. Ballard, contrary to all legal precedent on the standard for granting Rule 12 motions. Fully addressing these new allegations, mischaracterizations and misstatements would require argument as lengthy as Dr. Ballard's Reply. What follows are only examples to illustrate the improper assertions.

For example, Dr. Ballard states that the "signal (sic) reason for particularity in pleading RICO fraud … is to **protect a defendant from reputational and other harm from unfounded allegations of fraud"** (bold in original); Dr. Ballard then cites *Tuscano*

---

[1] On page 2 of Dr. Ballard's Reply, he incorrectly cites to *Kros, Inc. v. Associated Press,* 199 U.S. 269, 278 (1936). For the benefit of the Court, the correct citation is *KVOS, Inc. v. Associated Press,* 299 U.S. 269, 278 (1936).

[2] Dr. Ballard alleges that on page 3 of NSI's Response, NSI made "conclusory assertions" that Dr. Ballard sent false reports to Atlanta, Georgia. Ballard Reply, Document 84 at p. 4. Page 3 of NSI's Response contains no such assertions. Further, Dr. Ballard argues that NSI failed to allege that Dr. Ballard was in Mississippi "*reading X-rays deceitfully* or here **writing** '*lies*' to NSI" and only pled conclusory allegations that "he was allegedly 'here' … doing something, possibly 'illegal'" and only pleads *these* conclusions 'upon information and belief'" referencing ¶139 of the Complaint. Ballard Reply, Document No. 84 at p. 4 (emphasis in original). Paragraph 139 of the Complaint relates to Dr. Ballard's and others' "blanket" x-ray orders, and does not address exactly what Dr. Ballard did when he was physically present in Mississippi. As stated elsewhere in the Complaint, however, NSI did, in fact, allege that Dr. Ballard was in Mississippi engaging in litigation screening with RTS without a license to practice medicine, which is illegal (and was questioned about such by Judge Jack in MDL 1553). Complaint ¶ 99 and NSI Response, Document No. 76 at 3.

11

*v. Tuscano,* 403 F. Supp. 2d 214 (E.D.N.Y 2005).  Ballard Reply, Document No. 85 at 1.  In fact, *Tuscano* states that Rule 9(b) pleading requirements are "three-fold," including, first, providing fair notice of the claims against the defendant.  *Tuscano* at 221.

Another example concerns judicial notice and Federal Rule of Evidence 201.  Dr. Ballard cites a Note to a Comment stating adjudicative facts are those that "relate" to the parties and then proceeds to state that the MDL 1553 proceedings did not "involve" NSI.  He ignores that the findings of fact in Judge Jack's opinion "relate" to Defendants RTS, Charles Foster, and Dr. Ballard, as well as to tort defendants (such as NSI).  Her findings "relate" to the screening activities of RTS, Mr. Foster and Dr. Ballard, and to fraudulent concealment conduct, such as the disregard of medical standards, shopping x-rays and rendering dual diagnoses or inconsistent diagnoses.

As an example of mischaracterization of NSI's arguments, contrary to Dr. Ballard's assertions in his Reply, NSI has not requested that the Court grant a negative inference with respect to Dr. Ballard's (or other Defendants') invocation of his Fifth Amendment privilege.  Rather, NSI has argued that Dr. Ballard's and other Defendants' refusal to answer questions related to their litigation screening activity is relevant to demonstrate their efforts to conceal their fraud.  NSI Response, Document No. 77 at 17-18, citing *United States ex. rel. Bilokumsky v. Tod*, 263 U.S. 149, 153-54 (1923).

Dr. Ballard also asks the Court to make factual findings based, for example, on the excerpts from NSI's 10-K filings and a news article which are not only improperly submitted in support of the Rule 12 motions, but do not contradict NSI's allegations in its Complaint as previously explained, above.

Dr. Ballard's apparent overriding theory in his Reply, which was only briefly addressed in his Rule 12(f) Motion, is that NSI has no standing. To that end, Dr. Ballard, for the first time, submits excerpts from NSI's SEC Form 10-K filings, which he then mischaracterizes. As previously stated, the well-pled facts of NSI's Complaint are that NSI formerly did business as North Brothers, Inc. and NSI has been sued and incurred defense and settlement costs, and made settlement payments, on the claims in Exhibit V to the Complaint. The Form 10-K excerpts do not contradict any of those allegations of the Complaint.

## Conclusion

NSI has adequately pled its claims for relief, accrual under the injury discovery rule, standing, personal jurisdiction and venue, and the case should proceed to discovery and preparation for trial. The motions to dismiss pursuant to Rule 12(b)(6), 12(b)(2) and 12(b)(3), and the Rule 12(f) motion, must be denied.

Respectfully submitted this 14th day of September, 2009.

NATIONAL SERVICE INDUSTRIES, INC.
f/d/b/a NORTH BROTHERS, INC., PLAINTIFF

_____
MARCY B. CROFT
ATTORNEY FOR PLAINTIFF

MARCY B. CROFT, MS BAR NO. 10864
WALTER G. WATKINS, JR., MS BAR NO. 6988
ASHLEY E. CALHOUN, MS BAR NO. 101303
FORMAN PERRY WATKINS KRUTZ & TARDY LLP
200 SOUTH LAMAR STREET, SUITE 100
JACKSON, MISSISSIPPI 392901
TELEPHONE: (601) 960-8600
FACSIMILE: (601) 960-8613

OF COUNSEL:
DAVID M. SETTER (Pro Hac)
JOHN M. SEEBOHM (Pro Hac)
JEANETTE S. EIRICH (Pro Hac)
FORMAN PERRY WATKINS KRUTZ & TARDY LLP
1775 SHERMAN STREET, SUITE 1900
DENVER, COLORADO 80203
TELEPHONE: (303) 837-6400
FACSIMILE: (303) 318-9669

## CERTIFICATE OF SERVICE

I, the undersigned attorney, on behalf of the Plaintiff, NSI, do hereby certify that I have electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

THIS the 14th day of September, 2009.

_____
MARCY B. CROFT