UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

NATIONAL SERVICE INDUSTRIES, INC.,
F/D/B/A NORTH BROTHERS, INC.                                    PLAINTIFF

VS.                                        CIVIL ACTION NO. 3:09CV83HTW–LRA

JAY T. SEGARRA, M.D.; RESPIRATORY
TESTING SERVICES, INC.; CHARLES E.
FOSTER; J. MICHAEL FITZGERALD, ESQ.;
CHRISTOPHER LINN TAYLOR; JAMES W.
BALLARD, M.D.; PHILLIP H. LUCAS, M.D.;
JOHN DOE DEFENDANTS 1–20                                        DEFENDANTS

**DR. JAMES BALLARD'S *FOURTH* MOTION FOR SUMMARY JUDGMENT
(RE: *RICO* FRAUD BY "FALSE" STATEMENTS)**

COMES NOW Dr. James W. Ballard, by counsel, pursuant to Fed. R. Civ. P. 56, and very respectfully moves this Honorable Court to enter an Order granting full and final summary judgment in his favor upon the ground that there is no *genuine* issue as to any *material* fact concerning the matters following:

1.      NSI filed the Complaint on February 12, 2009.  [1].

2.      The Complaint, *in conclusory form only*, charged Dr. Ballard with writing and publishing, to NSI's injury, B read reports (*see* Exhibit "V" to [1]) which were claimed (again in conclusory, nonspecific fashion) to be false in the substance of the information Dr. Ballard had stated.  Collected here, quoted from the Complaint, are **_the only_ "fraud" by false statement (but entirely conclusory) assertions** which NSI made in the Complaint:

> 2.      . . . Defendants . . . schemed to . . . generate *false* **medical documentation**. . . .  Defendants engaged in this unlawful scheme . . . by creating *fraudulent* **medical documentation.**

. . . .

8.     Defendants made millions of dollars by fabricating [sic] this **bogus "medical evidence" for asbestos litigation claims. . . . Defendants . . . fabricated medical . . . reports. Defendants' . . . customers . . .** [,] using the *false* **medical records,** overwhelmed . . . NSI . . . with voluminous claims supported by the *false* **. . . reports** . . . .

9.     In thousands of these cases, Defendants . . . deviated from medically sound . . . standards . . . **to create** *false* **positive results** . . . which indicate the presence of asbestos-related disease. . . . Defendants generated *false* **x-ray reads,** . . . *false* **medical reports** and **false diagnoses** (hereinafter "*False* **Medical Reports** . . .") **which are** *not bona fide or accurate* **statements of the condition of the individuals** . . .

10.    Plaintiff . . . paid millions of dollars to defend and/or settle . . . claims. . . **Supported by Defendants'** *False* **Medical Reports** . . . .

. . . .

38a.   Personal injury law firms . . . directly **hired . . . Dr. Ballard . . .** *to generate False* **Medical Reports.** . . . .

. . . .

39.    The enterprise [sic] . . . **generated** *some legitimate but mainly False* **Medical Reports.**[1]

40.    The enterprise . . . is a continuing enterprise . . . whose purposes in **generating and using** *False* **Medical Reports** . . . has remained constant.

41.    Defendants operated . . . **to generate [sic]** *False* **Medical Reports.**

. . . .

_____

[1] *See* transcript quote *infra* p. 7 where NSI's counsel alleges that "all" of Dr. Ballard's B Reads were substantially false.

43.   **The . . . Enterprise used . . . <u>Dr. Ballard</u>. . .. to provide _some_ _legitimate but mostly False_ Medical Reports**. . . .

. . . .

76.   RTS paid physicians <u>more money for positive results</u>, **encouraging** . . . **Dr. Ballard**[2] **. . .** _to generate false diagnoses_ [sic].

. . . .

98.   Dr. Ballard . . . participated . . . **[by] providing** _false_ **B-reads [and] providing** _false_ **diagnoses.** . . . .

. . . .

142.   . . . Dr. Ballard . . . _interpreted_ **[sic]**[3] <u>chest x-rays</u> _falsely_ **and created** _fraudulent_ **reports of** _false_ **positive readings**. . . .

. . . .

151.   . . . Dr. Ballard . . . **generate[d]** _false_ **diagnostic reports**. . . .

. . . .

157.   Defendants . . . **submitted . . .** _false_ **medical reports**. . . .

. . . .

159.   . . .Plaintiff **paid . . . based . . . upon the Defendants'** _False_ **Medical Reports**. . . .

. . . .

---

[2] This allegation is categorically sham and false; Dr. Ballard charged and received a uniform price for all B reads.

[3] In that part of medicine which constitutes opining on a one-dimensional gray image in an X-Ray film that cannot be reshot (no patient being _present_), NSI **concludes** that even entirely possible <u>interpretation _errors_</u> are indicia of "fraud", without specifying the particulars in which any "false" interpretation was wrongly _discerned_. NSI counts even honest misinterpretations as to which multiple experts might merely disagree as "frauds."

176.    Plaintiff **settled . . .** *false* **claims in excess of $80 million in reliance on False Medical Reports**. . . .

. . . .

181.    **. . . Plaintiff had no reasonable means or opportunity for access to the necessary volume of records to expose Defendants' . . . practice of generating** *False* **Medical Reports. . . .**[4]

. . . .

205(b) The purpose of the . . . scheme was to defraud Plaintiff . . . **by generating . . .** *false* **medical reports.**

. . . .

205(d) [Re: Complaint Exhibit V] **each of these [31, 916] cases contain <u>one or more</u> [unpleaded]** *false* **statements**. . . .

. . . .

212.    Plaintiff . . . <u>**settle[d] numerous**</u> **claims based on** *False* **Medical Reports. . . .**[5]

. . . .

215.    . . . **Defendants made** *false and fraudulent* **statements of fact, namely** *false* **. . . B-read reports**

. . . .

216.    . . . Defendants were **aware of the** *falsity* **of the representative.**

. . . .

225.    . . . Defendants . . . **made false representations of material fact, namely** <u>*false . . . reports, including B-read reports*</u>.

---

[4]  *See* Dr. Ballard's Fifth Motion for Summary Judgment.

[5]  *See* Document No. 139-1 at ¶ 10, NSI's admission that "settlements" were entered typically before any of the unexamined medical documentation was in NSI's hands.

-4-

. . . .

227. Defendants knew . . . that the individuals [asbestos claimants] who were the **subjects of the *False Medical Reports*** . . . would rely **and act on those *False* Medical Reports. . .[6]**

228. Plaintiff's ***reasonable*** **reliance [sic][7] on the *False* Medical Reports** . . .

**[Note: all eccentric capitalization in quotes, *supra*, is by NSI in original Complaint.]**

([1]) (emphasis added).

3.    NSI did not plead *wherein* each of Dr. Ballard's B read reports was particularly *false* in its substance and therefore contained even one fraudulent statement so as to inform Dr. Ballard and the Court what the "false statement" was, as required by, <u>*inter alia*</u>, Fed. R. 9(b); *instead* NSI disregarded Rule 9(b) and **perfunctorily stated, <u>in conclusory fashion,</u>** that *every one* of Dr. Ballard's B read reports *was false in its substance*, ***stating this conclusion* (but nothing more) at least *three dozen times*.**

4.    The "*falsity*" of Dr. Ballard's medical reports was *charged* repeatedly but only *generally <u>NSI never pleaded even one statement</u> about the Exhibit V claimants written by Dr. Ballard in his subject B read reports, on their <u>possibly</u> asbestos-related diseases, which was allegedly "false".*  *NSI  pleaded not one "false" statement with the specificity required by* Fed. R. Civ. P. 9(b), Fifth Circuit RICO case precedent, **and this Court's 1998 Standing Order on RICO cases;** *moreover,* all of NSI's conclusory assertions about "fraud" by Dr. Ballard were

---

[6]  The Complaint alleges at ¶ 3, that the B read reports were <u>not provided to claimants</u> but to the plaintiffs' lawyers who hired Dr. Ballard, which doctors chose to file claims against NSI, <u>or not</u>.

[7]  *See* Dr. Ballard's Fifth Motion for Summary Judgment **quoting** *inter alia*, **admissions in affidavit of NSI general counsel/CEO Morgan [139-1] that directly contradict ¶** 228's allegations of "reliance."

made in a pleading required to meet the plain **constraints of *Fed. R. Civ. P. 11* and of *Title 28 U.S.C., Section 1927,* as amended**, necessitating Document No. 43, two lengthy hearings, and the filing of *this* motion.

5.     At the reconvened hearing held September 9, 2010, a hearing called by this Court for argument on grounds for 12(b)(6) dismissal not previously argued to the Court (during the earlier September 3, 2010 hearing) and to address in particular, NSI's  insufficient pleading of "fraud" under Rule 9(b), etc., **NSI made the following admissions on the record:**

> Mr. Seebohm:*     Your Honor, there can't be any question that . . . we have fulfilled our responsibility under Rule 9(b) of pleading with particularity [note] ***the CIRCUMSTANCES* of fraud** [**as opposed to** the **false** *substance* **of the particular, allegedly false medical statements alleged to have been thereby made fraudulently**].
>
> ***We have the [false] reports* that are referenced in** Exhibit V.[8]  And when we get to discovery, we will make them available.  *But we have been asking ourselves* [sic], . . . *how could we have better plead [sic] this*? . . . **To set forth in the Complaints [sic] specifically what these false statements are** [sic] **would result in a Complaint that's 10,000 pages long.**

---

[8] **Exhibit "V" names various doctors, but not one "false" B read report is identified anywhere in Exhibit "V" and no such report is anywhere quoted, let alone "referenced" in Exhibit "V".**

> **The [false] statement is on the x-ray interpretation, _if you classify it as abnormal, that's the false statement._[9]**

(Transcript, Document No. 131-2, 27, lines 14-20, 24-25; 28, lines 21-22) (emphasis added).  **NSI carefully avoided saying to the Court that it <u>could not</u> specify the falsity charged**, here saying instead only that obeying Rule 9(b) would require a lot of "pleading" NSI had not bothered to do.

6.      NSI's **<u>unfounded</u>** charge of substantive falsity was expressly _repeated,_ to the Court several times, at the hearing convened September 9, 2010:

| | |
|---|---|
| THE COURT: | So this 31,000 plus claims, are you saying that all of those were illegitimate? (p. 76) |
| Mr. Seebohm: | <u>**We contend those are all false** and fraudulent, correct.</u> |
| THE COURT: | And were all of those [reports] submitted to you? |
| Mr. Seebohm: | Yes.[10] |
| THE COURT: | To your client? |
| Mr. Seebohm: | Yes, Your Honor. |
| THE COURT: | **And you also made the statement that you have the alleged false statement that concerns each one**? |

---

[9] **It was not until pages 186 of that transcript ( Document No. 131-2) that NSI candidly admitted to the Court that it did not have any of the 31, 916 claimants' X-Ray films, yet _here_ NSI gratuitously stated** that, if Dr. Ballard thought an X-Ray (one NSI had never seen) was "abnormal", then Dr. Ballard _had to be_ lying.  NSI's claim to be omniscient, even prescient, **about films NSI has never seen, is not well-pleaded "fact."**

[10] See [139-1] at ¶ 11, NSI admitting that it was the personal injury attorneys, not Dr. Ballard, who submitted documents to NSI.

| | | |
|---|---|---|
| Mr. Seebohm: | We have the [B read] reports that were submitted to National Service Industries.  That's correct. |

THE COURT:   <u>That you **contend** is false</u>.

Mr. Seebohm:   <u>Yes</u>.

THE COURT:   Okay.  In <u>*each one*</u> of those [31,916] cases,

Mr. Seebohm:   <u>Correct</u>.

76,77      THE COURT:   ___***But it was not pleaded***__.  __***It is not set out in the Complaint [the false content] of each report.***__

Mr. Seebohm:   **That's right,** Your Honor.  It's - - the ___***cases***___ are *identified* on our Exhibit [V].

THE COURT:   The **case** *is identified*.

Mr. Seebohm:   ___We identified ***the individuals as to whom*** they submitted [31,916] reports. . . .___[11]

. . . .

79        But right now, in the report that we contend in a given case was <u>the fraudulent report [it] is not appended to the Complaint</u>.[12]

. . . .

81       THE COURT:   All Right.  Let's go back to Plaintiff.  **Are you making that representation [*of falsity*]**? <u>*I asked earlier* about what your representation was, and</u>

---

[11]   The admission directly contradicts the earlier representation to the Court that each of Dr. Ballard's "false" reports was actually "referenced in Exhibit V."  *See* ¶5 at second quote, *supra*.

[12] Rule 9(b) RICO case precedent and the Court's Standing Order nowhere requires the false report to be appended to the Complaint.  **NSI here asserts it is "innocent" of violating a pleading requirement that does not exist.**

<div style="margin-left:2em">

you said - - and you said that **all** of these [reports] are false.

Mr. Seebohm:   These - - *we contend* that *all* of the reports submitted in these cases by these doctors are *false*.

82
            **Now, is it possible that there are some people here that have asbestos-related disease? That's possible**.   But their reports are false **because** they don't apply accepted medical practices **[rank conclusion]**, and they generate false and fraudulent medical reports by essentially rubber stamping to find x-ray abnormalities and to make diagnoses [sic] as they are requested by Plaintiff's attorneys. . . . **So** these reports are false.[13]

THE COURT:   . . . So when **you** say "false", you're saying - - *your* definition of false is false in methodology. **You're** not saying false in outcome.

Mr. Seebohm:   They are misrepresenting.   They are misrepresenting **the [unpleaded] medical facts**[14] that they have set out in their reports.

THE COURT:   But again we are talking about methodology.   Is that so?

</div>

---

[13] More rank conclusion offered as a substitute for pleading the specific false statement that "misled NSI."

[14] *But see* NSI's admission quoted on page 20 of this Motion admitting that, without having reviewed X-Rays on each claimant (something Dr. Ballard did do) NSI cannot tell wherein Dr. Ballard's B read reports are "actually" false — **but NSI pleaded they were false anyway**.

|  | Mr. Seebohm: | It isn't - - there is accepted methodology that they utterly disregarded. [more rank conclusion][15] |
|---|---|---|
| 82 | THE COURT: | Right. |
|  | Mr. Seebohm: | Knowingly and recklessly. |
|  | THE COURT: | **But, *you're not* saying that *all* of these reports are false in their diagnosis?** [sic] |
|  | Mr. Seebohm: | *We are saying* that these reports *are* false. |
| 83 | THE COURT: | <u>**All of them**</u>? |
|  | Mr. Seebohm: | <u>We are saying **all of their reports are false**</u>. |
|  | THE COURT: | I don't understand, though.   Wait a minute. Let's make sure we have the definition of what "false" is.  So then you're saying, then, that this report that says that an individual here has asbestosis, **you're saying that that person <u>does not</u> have asbestosis**? |
|  | Mr. Seebohm: | <u>***We believe***</u> based on the fact [sic] they render false [sic] B-reads and diagnoses [*ipse dixit*] that they do not. |
|  | THE COURT: | **You <u>*believe*</u>** - - |
| 83 | Mr. Seebohm: | Correct.  **Now <u>we haven't been able to</u> do – we have - National Service Industries hasn't been able to <u>evaluate all of these people.</u> . . .** |
|  | Mr. Seebohm: | <u>**We don't have access to the X-rays [that would show a B-read report false].  We don't have access to the people [claimants].**</u> |

---

[15] How Plaintiff's counsel would <u>know</u> (let alone say such a thing to the Court), merely from looking at a B read report, is totally conjectural; see pp. 87-88 of transcript, **admitting that <u>without access to X-Ray films, Plaintiff has no way</u> of asserting that the "methodology" was "false" either.  Yet the suit was filed anyway <u>as a fishing expedition</u>.**

Mr. Browning:   Don't assert a RICO claim.

THE COURT:   Let him finish.

Mr. Seebohm:   We rely [sic][16] on medical reports submitted to us as being legitimate. . . .

THE COURT:   One second.   Hold it.   **So then when you embarked on the lawsuit, you had *some notion* that something was false**?

Mr. Seebohm:   **Yes**.

THE COURT:   *Something* was fraudulent.

Mr. Seebohm:   **Yes**.

THE COURT:   **What was your *proof*[17] on that**?

Mr. Seebohm:   Well, it is the epidemiology [*i.e.*, the proof is not in the false content of a statement, as was repeatedly alleged] of the disease.   We have . . . a report by a physician . . . in which he details his conclusions . . . how their diagnoses **[in other cases]** are inaccurate.   And in fact - -

THE COURT:   It says they are *inaccurate*.   Does this mean **these** people do not have asbestosis?   Did he conclude that **they** do not have asbestosis?

Mr. Seebohm:   He concluded that they [diagnoses [sic] *in other cases*] are false - - *essentially false*.

_____

[16] *See* Dr. Ballard's Fifth Motion for Summary Judgment which addresses thoroughly what NSI has finally admitted its "reliance" consisted of.

[17] Rule 11 requires a sound factual basis for cases that do not involve "fraud".   NSI's pleading burden as to fraud is higher than that.

THE COURT:    **Counsel, I need you to *answer me*.  I need you to *answer me*.  Did he conclude they did not have asbestosis**?

Mr. Seebohm:        **I need to - - excuse me – turn to [Plaintiff's] counsel with the recollection of the report.**

85    Mr. Setter:    . . .[W]e have Dr. Haber's report . . . in the ***W.R. Grace bankruptcy cases*** . . .

([131-2]) (emphasis added).

7.    NSI asserts in its RICO case statement that Dr. Ballard: "agreed . . . to generate more positive diagnoses [sic] than would occur in . . . an exposed population. ([7] at p.40.)

8.    However, NSI can not have any knowledge of and thus has no "proof" of the total size of the population exposed to products distributed or installed *by North Brothers, Inc. or by NSI*.[18]  Indeed, such a number is entirely speculative – utterly unknowable!

9.    **But, in that connection, historically NSI has manipulated the information it pleads or makes available *to particular district courts* about the sizes of populations of working men and women whom NSI has exposed to asbestos**.  When NSI was in another district court, seeking to serve different exigencies of that moment, **NSI wrongly[19] attempted to persuade the** *Georgine* **court to certify a friendly "settlement only" class action "against" National Service Industries, Inc..  In doing so, the U.S. District Court for the Eastern District of Pennsylvania**

_____

[18] NSI did not even sue Dr. Ballard about any exposures for which NSI contractually assumed North Brothers, Inc.'s pre-December 6, 1966 tort exposures; nor did NSI sue Dr. Ballard for exposures caused by NSI doing business under the name "North Bros. Co."; see Complaint caption and ¶17.  *See also* Dr. Ballard's First Motion for Summary Judgment [127].

[19] Wrongly according to the Third Circuit Court of Appeals in *Georgine v. Amchem Products*, 83 F.3d 610 (3rd Cir. 1996).

-12-

was led to believe (to justify class treatment) that the population of living persons previously exposed to asbestos products was as many as <u>2,000,000</u> *individuals* (**83 F.3d 617**), *an indeterminate number of whom* the Court found were, *even if* potentially exposed in their pasts, *wholly asymptomatic*. <u>Yet NSI ("defendant" in *Georgine*) insisted that such persons' cases be settled *too*</u>. *Id.* at 617. NSI's zeal to settle, **no matter what**, is indicative of Plaintiff's <u>documented</u> and <u>admitted</u> history of settling, in a profligate and irresponsible manner, even those asbestos claims upon which Plaintiff fully recognized it could not possibly have an exposure or legal liability: see NSI's admissions against interest to this effect in [1] at ¶ 6; [139-1] at ¶ 15; [128-3] at 25;[130-3] at 73-75; [132-4] at 20-21; [7] at 31.

10.     However, in the *instant* Complaint, when speaking **to *this* District Court**, NSI alludes to (*in Ex. "V"*) 31,916 claims of injurious exposure (that "Plaintiff" **voluntarily** settled), **implying that "31,916" persons were 100% of all exposed persons. This constriction of the exposed population was pleaded by NSI** in Exhibit "V" of the Complaint (Document No. 1) *to a purpose* — so that, concerning the "population" of persons "exposed" to asbestos products, **"studies"** (that asbestos defendants like NSI[20] refer to as "reliable") can be cited that show "only" 15% of "exposed" workers will contract an asbestos-related disease. (Document No. 1, ¶ 141.) NSI has misused exposure data to create **NSI's *current* erroneous suggestion that, if 31,916 was the scope of the asbestos-exposed population, then 31,916 claims was "too many" to be statistically believable (thus, had to be "fraudulent") [because "studies" predict "15%" of**

---

[20] In *Jackson v. Breeding Insulation Company, Inc., et al*, a verdict against NSI in Tennessee state court reportedly turned upon the fact the jury found NSI, along with its industry cohorts, had a history of misrepresenting, with "studies", *the harmlessness of asbestosis*. [132-7]. See Complaint at ¶ 16 which references this asbestos "valuable properties."

**31,916 would only be 4,787 persons with disease]. But 15% of 2,000,000 exposed persons**

**(per *Georgine*) would calculate as <u>300,000</u> exposed persons. There is, thus, no evident**

**"fraud", as claimed, in an apparent incidence of asbestos disease lower than 15% or, as here**

**<u>1.6%</u>.**

      11.    **31,916 workers suing NSI, <u>as a percentage of 2,000,000 exposed persons</u>, is**

**only 1.5% <u>or only about one-tenth what NSI's claims "studies" say *should be* "the norm" for</u>**

**<u>asbestos-related[21] disease manifestations</u>. And *mere scarring*, as discerned by a B *reader on***

***an X-Ray*, is <u>not</u> equivalent to or synonymous with *diagnosis* of a symptomatic disease. (See**

NSI's Complaint ¶¶ 21-22 confirming this fact.)

      12.    The 2,000,000 "population" of exposed persons is a number probably understated

in *Georgine* but nevertheless advocated or sponsored as "true" in the U.S. District Court for the

Eastern District of Pennsylvania. That exposed population, however, was not pleaded by NSI in

this case.

      13.    Factually, there is a heightened, not lessened pleading obligation for RICO claims.

Under no circumstances does RICO allow NSI to assert speculative, contingent "claims". RICO

requires that NSI's claims be factually true.

      14.    At the hearing on Document 43 held on **September 3, 2010,** while NSI was arguing

against the enforcement of the RICO period/state statutes of limitation (and claiming NSI's

"injuries" had been "caused" by Dr. Ballard's utterances of allegedly false <u>but unspecified</u>

---

    [21] A B reader does not look at lung scarrings manifesting as "opacities" and then pronounce the person X-Rayed **is** sick, *or even is symptomatic*, let alone what disease he <u>actually has</u> – <u>only</u> that the opacities seen are, in his opinion, ***"consistent with"*** the **possibility** of exposure to, *here*, asbestos fibers.

*wherein* "false" B read reports, information **supposedly "fraudulently concealed"** from NSI *by movant*), **NSI admitted to the Court that it had all of Dr. Ballard's allegedly "false statements" in its hands, *before* NSI paid those claims.** [131-2] at 5.

15.     NSI's Complaint alleges, at least 36 times (Document No. 1) that Dr. Ballard wrote B read reports (*i.e.* reports prepared after examining chest X-Ray films shot by other medical providers) stating that there were **(or were not)** present on these X-Ray films opacities consistent with asbestos-related diseases. (Document No. 1) The Court <u>began</u> testing what NSI had pleaded on September 3, 2010.

16.     The Court recessed the September 3, 2010 hearing before hearing argument on or reaching movant's grounds for dismissal **for failure to plead the substance of the false, fraudulent B read statements**.

17.     Then, at a subsequent hearing convened by the Court, to address fraud-pleading deficiencies under Rule 9(b), RICO pleading  precedent, state fraud pleading precedent and the Court's 1998 Standing Order on RICO cases, **NSI represented to the Court[22] no fewer than 21 times that indeed *it was* contending that *every single one*[23] of Dr. Ballard's B reads was false in its substance.**

----

[22] See, *e.g.,* Plaintiff's arguments and responses to questions by the Court on the alleged falsity of movant's B read reports at [131-2] at pp. 4-6, 8, 12, 20, 21, 29, 76-79, 82-85, 87, 89 and 90-91.

[23] At Complaint ¶¶ 70-73, NSI pleaded that the Defendants' "plan" was to find corruptly that about <u>40%</u> of the exposure population had an indication of an asbestos-related disease.  Yet at the hearing on September 9, 2010, NSI told this Court that *every one* of Dr. Ballard's B Reads was substantively false. [131-2] at 76-77, 83.

18.     At that September 9, 2010  hearing ([131-2] at 29), NSI made on the record an unsolicited statement to the Court expressly representing that, although NSI <u>was at the time suit was filed,</u> and is today (see present tense of the verb underlined below), ***actually capable of specifying the exact false content of any of Dr. Ballard's B read reports***, the <u>only</u> reason that NSI had not done so was because of the effect doing so would have had on the length of the Complaint:

> Mr. Seebohm:     <u>We have</u> the [false B-read] reports that are referenced in Exhibit V [to the Complaint].  And when we get to discovery, we will make them [the false B-read reports] available.  *But we have been asking ourselves,* with this scope of a fraudulent enterprise, with these tens of thousand of instances, *how could we better have pled this?* **It's [it is] possible, but the notion that we would in a complaint specify in paragraphs in the complaint what the false [statements] – specific false statements [made by movant Ballard] were in these [B-read] reports, which as you've just seen with the exhibits I've shown, can be** multiple [false] reports in a given [claimant's] case [would be troublesome for Plaintiff to have to do].  **To set forth in the complaints [sic] specifically what these false statements** [in the movant's B-read reports] **are** *would result* in a complaint that is 10,000 pages long.

([131-2] at 29) (emphasis added).  **NSI said to this Court it was *presently possible* — *i.e. within NSI's present ability*, to specify which of Dr. Ballard's statements were** <u>actually</u> false.

19.     ***Then***, in response to additional direct questioning by the Court, NSI admitted that although Plaintiff possesses *all of the allegedly false reports*, indeed <u>NSI had not</u> pleaded specifically what statement Dr. Ballard  had made in each one of his B read reports that

**made each of his reports separately false in its substantive statements;** this was a 180 degree

turn-about**:**

THE COURT:      So this 31,000 plus [reports], are you saying that all of those were illegitimate?

Mr. Seebohm:      We contend those are all false and fraudulent, correct.

THE COURT:      And were all of those [reports] submitted to you . . .[t]o your client [National Service Industries, Inc.]?

Mr. Seebohm:      Yes, Your Honor.

THE COURT:      And you're saying that full number were all illegitimate?

Mr. Seebohm:      We – that's what we are contending, Your Honor.

THE COURT:      **And you also made a statement that you have the alleged[ly] false statements that concerns each one [of the 31,916 claimants).**

Mr. Seebohm:      **We have the [false] reports that were submitted to National Service Industries. That's correct.**

THE COURT:      **That you contend is false.**

Mr. Seebohm:      **Yes**.

THE COURT:      **Okay.  In each one of those cases.**

Mr. Seebohm:      **Correct**.

THE COURT:      But it was not pleaded.  It [the specific false statement] is not set out in the Complaint, [the specifically false statement(s) Plaintiff alleges is (are) in] each report.

Mr. Seebohm:     <u>That's right</u>, Your Honor.  It's – <u>*the cases [but not the false statements allegedly made as to each of those cases] are <u>identified</u> on our exhibit.*</u>

THE COURT:     The <u>case</u> is identified.

Mr. Seebohm:     We identified the individuals [claimants] as to whom they [claimant's attorneys] submitted reports so that you can go into the [claimants'] files for a particular individual and you will find - - if it say's there's Dr. Lucas [sic], there's Dr. Lucas' report or Dr. Segarra's report or Dr. Ballard's report.  But <u>obviously, the complaint does not contain internally</u> a listing of – it [the Complaint].  But right now, . . . <u>the [false] report</u> that in a given case was the fraudulent *is not appended*[24] to the Complaint.

*Id.* at 76-77, 79 (emphasis added).

20.     While NSI's admission–that NSI <u>has not</u> *pleaded* what specific opinions stated by movant in each of his reports was allegedly "false"–was *itself* a true statement (and was in fact self-evident from the Complaint), **the separate statements that NSI already "knew" <u>when it filed suit</u> what specific language in each of those reports was "false" was totally inaccurate**, as the Motion will now show.

21.     **<u>By the conclusion of the September 9 hearing</u>, NSI had admitted, but only after being directly pressed upon the subject by the Court that, as a matter of fact, although NSI had sued Dr. Ballard  *alleging that* the unspecified contents of his B read reports <u>in this case</u> were <u>all</u> false, *in point of fact,* NSI had made those assertions of "fact" despite while knowing**

---

[24]  This "answer" to the Court's question is not responsive, but a *red herring*.  <u>Rule 9(b) does not require the entire report to be "appended" to the Complaint.</u>"  The Rule and the case precedent and the Standing Order all require **<u>only</u> that** NSI **<u>to specify what words in each report are alleged to be false</u>**.

-18-

**(as shown by this colloquy <u>between NSI and the Court</u>) that those unequivocal assertions of general "falsity" in the Complaint <u>were only based upon NSI's assumptions and conclusions</u>, not upon the basis of any direct evidence of actual fraud in substance – as NSI had alleged:**

81   THE COURT:   . . .Are you making that representation [to the Court]?   **I asked earlier** about what your representation was, **and you said** – and you said that **all** of these [B-read reports by movant [ ] are false.

Mr. Seebohm:   These [reports] – we contend that all of the reports submitted in these cases by these doctors are false.

   **Now, is it possible that there are some people here [listed in Exhibit V] that have asbestos-related diseases?   That's possible. But their reports are false** because they [movant] don't apply accepted medical practices **[NSI's conclusion]** by essentially rubber-stamping **[NSI's conclusion]** the first **[NSI's conclusion]** x-ray abnormalities and to make diagnoses **[NSI's assumption** as to movant] as they are requested by plaintiff's attorneys.[25] They don't make these x-ray interpretations in [and] these diagnoses based on the people's [claimants'] actual medical condition assumption. They make them based on an utter disregard for medical [*i.e.* B-reader] practices, and they know it **[NSI's conclusion]**.   So these are [all] false reports **[NSI's conclusion]**.

---

[25] **As NSI admitted at pp. 21 and 24 of Document No. 131-2, <u>over 150 different agents can cause "the type of X-Ray changes that can be – *could* be asbestosis *or could be something else*, . . ." *Id*. at 24. <u>Obviously</u>,** the 31,916 claimants' attorneys would not have been moronically hiring B readers to assay X-Rays for **changes "consistent with"** *<u>the other 149 possible causes of irregular opacities, <u>about which no one was bringing claims</u>,</u>* if their clients were only seeking compensation for those claimants' exposures *<u>while working around asbestos products,</u>* for which exposures *NSI* could be held potentially liable.

THE COURT:    Wait a minute. . . . So when you say "false", you're saying - - your definition of false is false in methodology?  You're not saying false in outcome [as to the x-ray interpretation the doctor made].

Mr. Seebohm:    They are misrepresenting.    They are misrepresenting **[here *NSI's* mere conclusion]** the medical facts that they have set out in their reports.**[26]**

THE COURT:    But again we are talking about methodology.  Is that [not] so?

Mr. Seebohm:    It isn't - - there is accepted methodology that they utterly disregard **[NSI's conclusion]**.

THE COURT:    **But you're not saying that all of these reports are false in their diagnosis [sic]?**

Mr. Seebohm:    <u>**We are saying that their [B-read] reports are all false.**</u>

83    THE COURT:    **All of them?**

Mr. Seebohm:    **We are saying all of their [B-read] reports <u>are false</u>.**

THE COURT:    I don't understand, though - Wait a minute.  Let's make sure we have the definition of what "false" is.  So then you're saying, then, what this report which says that an individual here **has** asbestosis.

Mr. Seebohm:    <u>**We believe**</u> **based on the fact [NSI's conclusion] that they render false B-reads and diagnoses [NSI's Conclusions] <u>that they do not have asbestosis.</u>**

---

[26] If this NSI representation to the Court <u>had been</u> known to be true **when the Complaint <u>was filed</u>**, there would have been no occasion for NSI to make the admission that followed it,[131-2] at 87:8-88:17, nor would there have been any need to make such following remarks, because NSI would have been able to plead fraud with specificity, provided it found "any," by comparing B Reads to X-rays ***<u>before filing suit.</u>***

THE COURT:      **You** *believe* - -

Mr. Seebohm:    **Correct.  Now, we haven't been able to do – we have [not] – National Service Industries, Inc. hasn't been able to evaluate**[27] **all of these people. [or their claims, for falsity yet] we proceeded [to settle these 31,916 claims] based upon their representations**[28] **that these people have** [sic] **[see footnote__] the disease**[29] they have diagnosed, that they have the x-ray abnormalities they have diagnosed [sic] – they have classified and reported and they have done so *falsely* **[NSI's conclusion]**.

84   **Mr. Browning:**   **Your Honor, that is the representation that** changes the case because what he said [just now] is effectively the doctor is not *reliable* in our [NSI's] view, therefore, we discount all of his report.  But we [National Service Industries, Inc.] have not [actually] evaluated *[all 31,916 B-read reports as to] every case*.  We haven't figured out *if* they are fraudulent.  **Actually known [by NSI] to be false isn't the [NSI] standard [by which we [NSI] intend to prove our cases against the doctors].**

---

[27] **NSI alleged or implied to the contrary at Complaint ¶¶ 176, 10, 159, that NSI had determined to pay the 31,916 claims** *but only after first reviewing the allegedly false reports upon which NSI alleges it* **relied before paying**!  **Manifest in the juxtaposition of NSI's Complaint with NSI's admissions above is that NSI and its claims settlement agents devised, on their own, a claims documentation process that was** **different from that described or implied in the Complaint.  That set of procedures was not established for NSI by movant or effectively chargeable** *ex post facto* **to movant.**  See Dr. Ballard's Fifth Motion for Summary Judgment.

[28] See Dr. Ballard's Second Motion for Summary Judgment re how NSI settled claims after merely receiving minimal, **unexamined** "documentation **of a type NSI unilaterally declared "adequate."**

[29] *See* footnote 22, *supra*.

84  Mr. Seebohm:  **We don't have access to the [31,916 claimants'] x-rays**, Your Honor. We don't have access to the [31,916] people.

**Mr. Browning**:  Don't assert a *RICO claim*.

THE COURT:  Let him finish first.

Mr. Seebohm:  We rely [when settling claims] upon medical reports *submitted* to us as being legitimate [B-read] reports by legitimate physicians[30] and they [the B-read reports and the physicians themselves] are not. It comes – it turns out that they will *diagnose* [sic] (Dr. Ballard was a *B-reader*][31] asbestosis if that's what you ask for [*NSI's* **conclusion**] and they will diagnose silicosis if that's what you ask for.

Mr. Norquist:  I object that there is no evidence of that.

THE COURT:  **One second. Hold it. So then, when you e-marked on the lawsuit, you had *some notion* that something was false**?

Mr. Seebohm:  **Yes**.

THE COURT:  ***Something* was fraudulent**?

Mr. Seebohm:  **Yes**.

THE COURT:  ***What* was your *proof* [as required by Rule 11] on that**?

---

[30]  Dr. Ballard is and has been since 1971, board-certified in Radiology and, until the malicious charges made against him, a member of the largest group of radiologists practicing in the State of Alabama. The Complaint, *for once accurate*, correctly alleges that Dr. Ballard was a NIOSH certified B reader. But, ***these* remarks about movant not being a legitimate physician are defamatory and not even colorably "privileged."**

[31]See footnote 22, *supra*.

-22-

Mr. Seebohm:      Well, it is in <u>the epidemiology</u> **[not in the "false" content of Dr. Ballard's B read reports as to each claimant]** of the disease.  We have attached to our RICO statement, for example, a report by a physician, Dr. Haber ,,, in which he details his **conclusions** ,,, how their diagnoses [sic] are inaccurate.  And in fact –

THE COURT:      It says they are inaccurate [diagnoses].  **Does that mean these people do not have asbestosis?**

Mr. Seebohm:      He concluded that they [doctors' report Haber <u>reviewed in another litigation</u> involving other claimants' exposures are false – essentially false. [not actually false, based on comparison of B read report to x-ray film]

THE COURT:      *Counsel, I need you to answer me.  I need you to answer me.*  <u>**Did he conclude they [the 31,916 claimants] did** not have asbestosis</u>?

Mr. Seebohm:      I need to – excuse me – turn to counsel with the **recollection** of the report. [Haber did **in that other case.]**

                        . . . .

87      Mr. Setter:      . . . [O]ur allegation is these are false statements of material fact about **either** the diagnoses of asbestos **[by clinical diagnosticians] or** consistent with asbestos on the ILO [forms by used B-readers like Dr. Ballard].

THE COURT:      **Now, you're saying that your readers, your B-readers - read each of these [31,916] reports that is [listed] in Exhibit "V" ?**

Mr. Setter:      **No, they did not.  We have not had [B] readers do that.  Your Honor. Here's why.  We do not have access to [the chest x-ray] films for these [31,916] individuals.  They are not [accessible] to us.**  That would be an issue in **discovery** that we would like to proceed with

**against certain [asbestos claimants'] lawyers** is to have them proceed to produce [all 31,916 claimant's chest x-rays] . . . **for our experts to make conclusions**[32]. . . .

88              <u>The only way we can proceed [to establish the falsity of B-read reports] is we've got to get the x-rays</u>[33] from the [claimants'] lawyers who have them because . . . Dr. Ballard, once he looked at the B-reads [sic x-rays], he gave the x-rays back to the [claimants' lawyers] who had sent them to him in the first place.

([131-2] at 81-88 (emphasis added).

22.     NSI admitted on the September 9 record that *Dr. Ballard* **cannot** produce the chest X-Rays he interpreted on some of the claimants because, NSI knows that after interpreting those films, Dr. Ballard returned those films to the non-party lawyers who had hired him. *Id.* at 88:10-17.

23.     NSI "excuses" its suing movant for uttering "false" statements (statements which NSI finds it impossible to specify wherein "false";  statements that NSI did not examine and find to be and now still <u>cannot demonstrate to be</u> "false,") by saying NSI **believes** it **may possibly find such proof later on,** *not by discovery conducted against movant,* (*in a suit groundlessly brought against Dr. Ballard),* **but only by discovery conducted of non-parties, the claimants' lawyers** - - all of *them, identified by name in the original Complaint filed in February 2009.*  These attorneys are  individuals who were not sued even though *NSI* <u>*named*</u> *every one of them in the*

---

[32] *See* **Dr. Ballard's Fifth Motion for Summary Judgment demonstrating that NSI voluntarily did not seek or have access to these X-Rays when NSI determined to settle and pay the claims.**

[33] Since that is the <u>only</u> way to show a B read report is false in its substance, then NSI has unequivocally admitted here that when it settled the 31,916 claims, it had in hand insufficient information to make any determination whether a claim was false, <u>as now alleged, or not</u>!  **NSI** **irresponsibly** (but **voluntarily)** paid the claims **anyway**, and today NSI is *calling* these payments "injuries".

*Complaint as lawyers "known" by NSI* and directly alleged they had been complicit in "frauds." NSI admits it is impossible for Plaintiff to specifically describe Dr. Ballard's fraud by citation to specific language *Dr. Ballard wrote.* Only *those lawyers'* rights, against abuse of process, malicious prosecution and Rule 11 and Section 1927 violations, have not been ***already violated by NSI.*** *Id.* at 87-88.  NSI did not shrink from violating Dr. Ballard's rights thereunder.

24.    **NSI has finally admitted** on **the record** ([131-2] at 81-88), **but only after being pressed by this Court for full candor**, **that,** although this suit was filed against Dr. Ballard alleging no fewer than 21 times that he uttered false B reads, **NSI did not have and knew it did not have a specific basis in fact for alleging the actual, specifically factually false content of even one let alone every one, of the over 31,916 B *read reports NSI says it had in hand when it paid every one of the cases in Exhibit V*.**  **This constitutes a frank admission that NSI violated the fraud pleading requirements as against Dr. Ballard.**

25.    NSI has likewise admitted on the record, **again only after being pressed to** *answer* the Court's questions, that NSI *intends to wrongly use and burden this suit against Dr. Ballard* **(even though NSI admits Dr. Ballard does not have the X-Rays that would have to have been in NSI's hands for NSI's review before filing suit against Dr. Ballard),** *hoping* **to be allowed to launch non-party discovery against those of the claimants' personal injury attorneys who hired Dr. Ballard to B read.  By so stating, NSI has made a frank admission of the utterly unnecessary, vexatious multiplication of proceedings in *this* action and that Title 27 U.S.C. Section 1927 has been violated by NSI.**

26.    NSI initiated this "civil action" against Dr. Ballard generally and conclusorily alleging his false statements, **notwithstanding that NSI was fully aware** NSI did not have in hand the proof necessary to establish that *even one* B read report done by Dr. Ballard had been

compared by NSI to even a single claimant's X-Ray **so that it could be objectively shown false as was alleged**.

27.     NSI authorized this civil action against Dr. Ballard **notwithstanding NSI was fully aware** that doing so would constitute the assertion of **31,916** unsubstantiated claims Plaintiff would ultimately have to admit (as it did on September 9, 2010) **that NSI had not established (and could not establish) by comparison to the 31,916 claimants' X-Rays.**

28.     NSI authorized its attorneys to plead that NSI had personally paid out over $80,000,000 to settle claims while knowing that NSI's own publicly accessible records showed NSI had not paid these monies but that insurers had done so.

29.     NSI authorized this civil action against Dr. Ballard to allege **NSI itself** had directly conducted the very, indeed, **the only asbestos products distribution and installation** that had caused the 31,916 claims to arise, while knowing full well, indeed while withholding from this Court and from Dr. Ballard, that NSI had actually **voluntarily** *assumed* the asbestos liabilities of North Brothers, Inc. and/or knowing that sworn public filings at the S.E.C. and a long series of NSI press releases had declared, contrary **to the Complaint**, that claims against NSI had arisen out of asbestos products distribution and installation done by another business formerly owned by Plaintiff ***but nowhere mentioned in the Complaint***.[34]

30.     This civil action for "fraud" was untimely[35] filed with an illegitimate and illegal *animus* to wrongly charge unproven acts against movant, from which "platform" NSI would launch fishing expedition "discovery", *not discovery of or from Dr. Ballard  and the other*

---

[34]See Dr. Ballard's First Motion for Summary Judgment re NSI's lack of standing.  [147].

[35]See Dr. Ballard's Third Motion for Summary Judgment re the limitations bar. [127].

*defendants*, but discovery from non-party attorneys,[36] to see if those non-parties had records that might be able to "paper over" the **unsupported allegations made by NSI against movant**.

31.     This civil action, as against Dr. Ballard, is a manifest sham.

32.     **The RICO case precedent authorizes summary judgment for NSI's purposeful violation of Fed. R. Civ. P. 9(b).**

WHEREFORE, Dr. Ballard very respectfully prays for summary judgment in his favor as authorized by the RICO case precedent pertinent to sham pleadings and/or failures to comply with Fed. R. Civ. P. 9(b), *etc.*

**DATED:  November 14, 2011.**

Respectfully submitted,

JAMES W. BALLARD, M.D.

BY:     *s/JACKSON H. ABLES, III*
        OF COUNSEL

JACKSON H. ABLES, III - BAR # 1027
jables@danielcoker.com
MATTHEW T. VITART - BAR # 103552
mvitart@danielcoker.com
DANIEL COKER HORTON & BELL, P.A.
4400 OLD CANTON ROAD, SUITE 400
POST OFFICE BOX 1084
JACKSON, MISSISSIPPI   39215-1084
TELEPHONE:  (601) 969-7607
FACSIMILE:  (601) 969-1116

---

[36] See Dr. Ballard's Second Motion for Summary Judgment re the lack of a RICO enterprise. [127].

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2011, I electronically filed the foregoing with the

Clerk of the Court using the ECF system which sent notification of such filing to the following:

| | |
|---|---|
| John A. Banahan, Esq. | O. Stephen Montagnet, III, Esq. |
| John M. Breland, Esq. | National Service Industries, Inc. |
| Kristin M. Bronson, Esq. - PHV | Samuel David Norquist, Esq. |
| Scott M. Browning, Esq. - PHV | Eddie Leitman, Esq. - PHV |
| Jessica B. McNeel, Esq. | Hubert G. Taylor, Esq. - PHV |
| Matthew G. Mestayer, Esq. | |

and have mailed a copy via United States Mail, first-class postage prepaid, to:

Charles E. Foster
8700 Dawes Lake Road
Mobile, AL 36619

s/ Jackson H. Ables, III

5854–120462